1  FLIESLER MEYER LLP
   Martin C. Fliesler (SBN 073768)
2  Rex Hwang (SBN 221079)
   Julie Daniels Missud (SBN 219508)
3  650 California Street, 14th Floor
   San Francisco, California 94108
4  Telephone:   (415) 362-3800
   Facsimile:    (415) 362-2928
5  mcf@fdml.com
   rhwang@fdml.com
6  jmissud@fdml.com

7  **Attorneys for Plaintiff,**
   **Hi/fn, Inc.**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CV 07  6430

MMC

| Hi/fn, Inc., a Delaware Corporation, | CASE NO. |
|---|---|
| Plaintiff, | |
| v. | **COMPLAINT AND CERTIFICATION OF INTERESTED PARTIES** |
| JONATHAN W. DUDAS, Director of the United States Patent & Trademark Office, | |
| Defendant | |

Plaintiff Hi/fn, Inc., by and through its undersigned attorneys, hereby files this Complaint against Jonathan W. Dudas, Director of the United States Patent and Trademark Office, to appeal the October 24, 2007 decisions denying Plaintiff's Petitions for Reconsideration Under 37 C.F.R. § 1.378(e) of Dismissal of Petition to Accept Delayed Payment of Maintenance Fee for U.S. Patent No. 5,414,850; U.S Patent No. 5,003,307; U.S Patent No. 5,016,009; U.S Patent No.

-1-   Complaint and Certification of Interested Parties

5,126,739; U.S Patent No. 5,146,221; U.S Patent No. 5,414,425; U.S Patent No. 5,463,390; U.S Patent No. 5,506,580 and U.S Patent No. 5,532,694 for unavoidable delay.

## THE PARTIES

1. Hi/fn, Inc. ("Hifn") is a corporation existing under the laws of the State of Delaware and has a principal place of business at 750 University Ave., Los Gatos, CA 95032.

2. Upon information and belief, Defendant Jonathan W. Dudas is Under Secretary of Commerce and Director of the United States Patent & Trademark Office ("PTO"), is a legal resident of the Eastern District of Virginia, and is named in his official capacity.

## NATURE OF THIS ACTION

3. This is an action seeking judicial review of a final agency action, namely, the PTO's decision on October 24, 2007 to deny Hifn's Petitions for Reconsideration Under 37 C.F.R. § 1.378(e) of Dismissal of Petition to Accept Delayed Payment of Maintenance Fee for U.S. Patent No. 5,414,850; U.S Patent No. 5,003,307; U.S Patent No. 5,016,009; U.S Patent No. 5,126,739; U.S Patent No. 5,146,221; U.S Patent No. 5,414,425; U.S Patent No. 5,463,390; U.S Patent No. 5,506,580 and U.S Patent No. 5,532,694 (collectively referred to hereinafter as "the Hifn Patents") and refusal to reinstate those patents. In particular, Hifn seeks review of the PTO's decision that delay in payment of the maintenance fees for the Hifn Patents were not unavoidable under 35 U.S.C. § 41(c)(1).

4. The PTO's decision was in violation of 35 U.S.C. § 41(c)(1) and the PTO regulations codified by 37 C.F.R. § 1.378(b) and 37 C.F.R. § 1.378(e).

5. Hifn seeks reversal of the PTO's October 24, 2007 decisions and reinstatement of Hifn's Patents.

## JURISDICTION AND VENUE

6. Jurisdiction of this Court is based on 5 U.S.C. §§ 701 *et seq.*, 28 U.S.C. §§ 1331, 1338(a) and/or 1361, and 35 U.S.C. § 41(c)(1). Hifn has suffered injury by the PTO's refusal to

reinstate the Hifn Patents, which are directed to data compression technology manufactured, licensed and/or sold by Hifn.

7. Venue is proper in this judicial district under 5 U.S.C. §§ 702-704 and 28 U.S.C. §§ 1391(e).

## FACTUAL BACKGROUND

8. U.S. Patent No. 5,003,307 issued on March 26, 1991. The first and second maintenance fees were timely paid in accordance with the provisions of 37 C.F.R. § 1.362(e)(1) and § 1.362(e)(2). The third maintenance fee could have been paid with the surcharge set forth in 37 C.F.R. § 1.362(e)(3) as late as March 26, 2003.

9. U.S. Patent No. 5,016,009 issued on May 14, 1991. The first and second maintenance fees were timely paid in accordance with the provisions of 37 C.F.R. § 1.362(e)(1) and § 1.362(e)(2). The third maintenance fee could have been paid with the surcharge set forth in 37 C.F.R. § 1.362(e)(3) as late as May 14, 2003.

10. U.S. Patent No. 5,126,739 issued on June 30, 1992. The first and second maintenance fees were timely paid in accordance with the provisions of 37 C.F.R. § 1.362(e)(1) and § 1.362(e)(2). The third maintenance fee could have been paid with the surcharge set forth in 37 C.F.R. § 1.362(e)(3) as late as June 30, 2004.

11. U.S. Patent No. 5,146,221 issued on September 8, 1992. The first and second maintenance fees were timely paid in accordance with the provisions of 37 C.F.R. § 1.362(e)(1) and § 1.362(e)(2). The third maintenance fee could have been paid with the surcharge set forth in 37 C.F.R. § 1.362(e)(3) as late as September 8, 2004.

12. U.S. Patent No. 5,414,425 issued on May 9, 1995. The first maintenance fee was timely paid in accordance with the provisions of 37 C.F.R. § 1.362(e)(1). The second maintenance fee could have been paid with the surcharge set forth in 37 C.F.R. § 1.362(e)(2) as late as May 9, 2003.

13. U.S. Patent No. 5,414,850 issued on May 9, 1995. The first maintenance fee was timely paid in accordance with the provisions of 37 C.F.R. § 1.362(e)(1). The second maintenance fee could have been paid with the surcharge set forth in 37 C.F.R. § 1.362(e)(2) as late as May 9, 2003.

14. U.S. Patent No. 5,463,390 issued on October 31, 1995. The first maintenance fee was timely paid in accordance with the provisions of 37 C.F.R. § 1.362(e)(1). The second maintenance fee could have been paid with the surcharge set forth in 37 C.F.R. § 1.362(e)(2) as late as October 31, 2003.

15. U.S. Patent No. 5,506,580 issued on April 9, 1996. The first maintenance fee was timely paid in accordance with the provisions of 37 C.F.R. § 1.362(e)(1). The second maintenance fee could have been paid with the surcharge set forth in 37 C.F.R. § 1.362(e)(2) as late as April 9, 2004.

16. U.S. Patent No. 5,532,694 issued on July 2, 1996. The first maintenance fee was timely paid in accordance with the provisions of 37 C.F.R. § 1.362(e)(1). The second maintenance fee could have been paid with the surcharge set forth in 37 C.F.R. § 1.362(e)(2) as late as July 2, 2004.

17. The above identified patents are collectively referred to herein as "the Hifn Patents" and all relate to data compression apparatuses, systems and/or methods.

18. Between March 2003 and September 2004, the Hifn Patents lapsed due to an unavoidable delay in the payment of maintenance fees. The delay in the payment of maintenance fees due on the Hifn Patents was unavoidable due to, among other things, the inadvertent failure of the law firm of Irell & Manella (Irell) to update its docket record for the Hifn Patents to reflect a change of client and ownership for the patents to Hifn that occurred in 1996.

19. Pursuant to 35 U.S.C. § 41(c)(1), the maintenance fee was payable at any time thereafter provided that the delay is shown to the satisfaction of the Director to have been unavoidable.

20. Hifn filed a Petition to Accept Delayed Payment of Maintenance Fees Under 37 C.F.R. § 1.378(b) to accept the delayed payment of maintenance fees due on each of the Hifn Patents on or about March 13, 2007 with the United States Patent and Trademark Office ("USPTO" or "PTO"). Each petition to accept the unavoidable delayed payment of the maintenance fees included: (1) the required maintenance fee set forth in 37 C.F.R. § 1.20 (e) through (g); (2) the surcharge set forth in 37 C.F.R. § 1.20(i)(1); and (3) a showing that the delay was unavoidable since reasonable care was taken to ensure that the maintenance fee would be paid timely and that the petition was filed promptly after the patentee was notified of, or otherwise became aware of, the expiration of the patent. The showing enumerated the steps taken to ensure timely payment of the maintenance fees, the date and the manner in which the patentee became aware of the expiration of the patent, and the steps taken to file the petition promptly. Relevant declarations and exhibits were also filed in support of the petitions.

21. On or about April 25, 2007, the petitions to accept unavoidable delayed payment of the Hifn Patents were dismissed by the PTO on the grounds that the petitions did not show that the delay was unavoidable. While Petitions Examiner Brian Hearn dismissed the petitions filed on or about March 13, 2007, he determined that criteria (1) and (2) above were satisfied. Criterion (3) was not satisfied, according to the Decision, and Petitioner was given two months from the date of the Decision to file a Petition for Reconsideration. The decision of April 25, 2007 further held that "[a] delay resulting from an error (e.g., a docketing error) on the part of an employee in the performance of a clerical function may provide the basis for a showing of 'unavoidable' delay, provided it is shown that: (1) the error was the cause of the delay at issue; (2) there was in place a business routine for performing the clerical function that could

1 reasonably be relied upon to avoid errors in its performance; and (3) and the employee was sufficiently trained and experienced with regard to the docketing function and routine that reliance upon such employee represented the exercise of due care."

22. On or about June 22, 2007, a Petition for Reconsideration Under 37 C.F.R. § 1.378(e) of Dismissal of Petition to Accept Delayed Payment of Maintenance Fee was timely filed for each of the Hifn Patents. Relevant declarations and exhibits were also filed in support of the petitions.

23. On October 24, 2007, the petitions for reconsideration under 37 C.F.R. § 1.378(e) were denied on the grounds that "Petitioner has not met his burden of proving to the satisfaction of the Director that the delay was unavoidable within the meaning of 35 U.S.C. § 41(c)(1) and 37 C.F.R. § 1.378(b)."

24. Plaintiff Hifn files this Complaint seeking judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.* challenging a decision made by Defendant denying Plaintiff's petitions to reinstate the Hifn Patents. Plaintiff has adequately shown that the delay in payment of the maintenance fees was "unavoidable" under 35 U.S.C. § 41(c)(1) and 37 C.F.R. § 1.378(b), and thus, Plaintiff is entitled to reinstatement of the Hifn Patents. This Complaint is timely filed within 60 days of the PTO's decision denying the petitions for reconsideration under 37 C.F.R. § 1.378(e).

**FACTS SUPPORTING SHOWING OF UNAVOIDABLE DELAY**

25. The facts supporting Plaintiff's showing of unavoidable delay are summarized here as set forth below.

26. The Hifn Patents issued between 1991 and 1996. The Hifn Patents were originally assigned to Stac, Inc. and/or Stac Electronics, Inc. (hereinafter collectively referred to as "Stac"). In 1996, Stac formed a related spin-off company named Hi/fn, Inc. ("Hifn"). In

1997, an assignment document conveying interest in the Hifn Patents from Stac to Hifn was recorded at the USPTO. The assignment document was submitted to the USPTO by Irell.

27. Bruce D. Kuyper, a registered patent attorney who worked at Irell from June 1990 through March 2000, was responsible for managing Stac's and Hifn's patent matters at Irell. Shortly after Stac transferred ownership of the Hifn Patents in November 1996, Mr. Kuyper sent instructions to Irell's Records Department for the purpose of conforming the firm's records with the change in ownership of the transferred patents. Specifically, on December 18, 1996, Mr. Kuyper sent an internal memo to Irell's Records Department with instructions (a) to close the Stac matters related to the Hifn Patents in favor of duplicate matters that the firm had recently created for Hifn, and (b) to close additional Stac matters identified on a list accompanying Mr. Kuyper's memo (which included the Hifn Patents) and to transfer these matters to Hifn. The matters designated for transfer on the accompanying list had been identified by John Witzel, Stac's Chief Financial Officer, in response to inquiry from Mr. Kuyper.

28. Irell's Records Department was responsible for opening and closing client matters. The Records Department, however, did not have any responsibility for the entry of patent-related information into the firm's patent docketing system. That task had always been handled by a patent docket clerk, who would act at the direction of a patent attorney or a senior paralegal, or in response to papers sent to or received from the USPTO. Under Irell's standard patent docketing procedures at the time, the patent docket clerk was provided copies of all papers sent to or received from the USPTO to make appropriate entries in the patent docketing system in response to those papers. The docket clerk would review each paper to determine the information that needed to be entered and would then enter that information into the system. If the docket clerk had any questions, the docket clerk was supposed to ask their supervisor or the patent attorney responsible for the patent application or patent. On occasion, the docket clerk

1  might receive instructions from the patent attorney or a senior paralegal, but the primary source
2  of information for entry into the system was the papers sent to or received from the USPTO.

3  　　　29.　　The patent docket clerk, Helena Esparza, did receive the recorded patent
4  assignment for the Hifn Patents on or before November 1997, and should have made entries to
5  the patent docketing system as necessary reflecting the assignment of these patents from Stac to
6  Hifn. However, Irell's records reflect that the Hifn Patents erroneously remained with Stac in
7  the patent docketing system. This clerical error was made during a routine docketing function
8  she performed as part of her duties.

9  　　　30.　　At the end of March 2000, Mr. Kuyper left Irell to join the law firm of Latham &
10  Watkins LLP ("Latham").

11  　　　31.　　On April 24, 2000, Stac changed its name to Previo, Inc. (hereinafter "Previo").
12  On June 15, 2000, Cliff Flowers, Chief Financial Officer of Previo, sent an email to Mary L.
13  Cohen at Irell providing notice to Irell that all appropriate files and any other pertinent materials
14  related to Previo be forwarded from Irell to Mr. Kuyper. The parties continued to refer to the
15  Previo patents as the Stac patent matters.

16  　　　32.　　On June 28, 2000, at Norman Brunell's direction, Rachele Wittwer, Irell's patent
17  docket clerk, generated a status report of all active Stac patent matters reflected in Irell's patent
18  docket system. As a result of the clerical error discussed earlier, the firm's patent docketing
19  system (and, therefore, the status report) mistakenly included the Hifn Patents, even though Stac
20  had previously assigned those patents to Hifn and Irell had opened corresponding Hifn matters
21  for records and accounting purposes.

22  　　　33.　　On June 28, 2000, Mr. Brunnel sent all files listed on the status report (including
23  the Hifn Patents) to Mr. Kuyper at Latham, together with a cover letter stating that (a) "we are
24  transferring the enclosed patent prosecution matters for Stac to you for further handling" in
25  accordance with Mr. Flowers' instructions and (b) "we have removed these applications from our

docket and expect that you will promptly notify the Patent and Trademark Office and the foreign associates of the transfer of responsibility as appropriate." As indicated from the cover letter to Mr. Kuyper, all Stac patent matters transferred to Latham, mistakenly including the Hifn Patents, were removed from Irell's docketing system (i.e., marked inactive). As a result, no maintenance fee reminders were generated for Irell with respect to the Hifn Patents after June 28, 2000. The next maintenance fees for any of the Hifn Patents would not become due until September 2002.

34.   After the Hifn Patents were mistakenly transferred as a result of the clerical error, there was confusion between the attorneys at Irell and Latham as to which firm would maintain the Hifn Patents. For example, on May 15, 2002, Bruce Kuyper of Latham wrote an email to Norman Brunell of Irell expressing his confusion as to who the Hifn Patents were assigned to and who should be paying for them.

35.   On December 23, 2002, Joanne Endow (hereinafter "Endow"), Director of Corporate Finance at Hifn from August 2000 to March 2006, attended a meeting with Norman E. Brunell of Irell and Jane Sinclair, the Controller at Hifn from 1998 to the present. At the time of the meeting, Endow was under the impression that both Latham and Irell were monitoring the due dates for payment of maintenance fees due on the Hifn Patents. In view of this understanding, Endow decided at the meeting to maintain the "status quo" so that Latham would handle all patent matters for all of the files in its possession and that Irell would handle all patent matters for all files in its possession. Even after that meeting, Endow had no reason to believe that Latham was not monitoring the Hifn Patents, even in light of the May 15, 2002 email from Bruce Kuyper to Norman Brunell.

36.   Hifn, who does not have its own in-house intellectual property counsel, reasonably relied on its attorneys to monitor and/or pay the maintenance fees for the Hifn Patents. Hifn and the attorneys at Irell had an ongoing attorney-client relationship wherein Irell handled the payment of maintenance fees on behalf of Hifn while Mr. Kuyper was at Irell. Irell

typically paid the maintenance fees on the Hifn Patents automatically, without notifying Hifn in advance. Specifically, it was the established practice at Irell of paying maintenance fees one month prior to the surcharge period. Hifn believed that its patent attorneys, who all along had paid the maintenance fees on behalf of Hifn, would continue monitoring and/or paying the maintenance fees on behalf of Hifn. Even after Mr. Kuyper left Irell for Latham, Hifn was notified of and authorized the payment of maintenance fees for U.S. Patent Nos. 4,930,142 and 4,996,690. Hifn reasonably believed that the maintenance fees would be monitored and/or paid by its attorneys, even when Mr. Kuyper left Irell to go to Latham.

37. On November 2, 2006, Hifn received an email from licensee Hewlett Packard that maintenance fees were not paid on several patents and that those patents had expired. This is the first time that Hifn was made aware of the failure to pay the maintenance fees for the Hifn Patents. The next day was Thanksgiving and the following Monday, November 27, Hifn's attorneys at Irell contacted George H. Gerstman of Seyfarth Shaw LLP regarding reinstatement of the Hifn Patents.

38. On December 4, 2006, Norman Brunell of Irell has contacted Abe Herskovitz regarding reinstatement of the Hifn Patents and indicated that further investigations should be conducted through George H. Gerstman. George H. Gerstman and Abe Hershkovitz, along with his colleagues at the law firm of Hershkovitz & Associate, immediately commenced a detailed investigation of the circumstances leading to the failure to timely pay the maintenance fee, and determined that a docketing error was the primary cause.

### FIRST CLAIM FOR RELIEF

### Judicial Review under the Administrative Procedure Act

### 5 U.S.C. §§ 701 *et seq.*

39. Plaintiff re-alleges and incorporates by reference herein each of the averments set forth within this Complaint.

40.     Hifn acted reasonably and prudently at all times in its ownership of the Hifn Patents. Hifn reasonably relied on its attorneys at large highly regarded California based law firms who were experienced patent practitioners to monitor and/or pay the maintenance fees for the Hifn Patents. Hifn reasonably believed and/or were reasonably led to believe that the maintenance fees would be monitored and/or paid by its attorneys, even when Mr. Kuyper left Irell to go to Latham.

41.     Irell had a reliable docket system for ensuring timely payment of maintenance fees for its clients. The inadvertent clerical error in not updating ownership of this patent to Hifn that occurred in 1997 at Irell resulted in the improper transfer of the Hifn Patents to Bruce Kuyper of Latham. The clerical error also led to the Hifn Patents being designated as being "inactive" in Irell's docket system. There was in place a business routine for performing the clerical function (i.e., updating the docketing system to reflect the new assignee's name) that could reasonably be relied upon to avoid errors in its performance. The docket clerk who made the clerical error, Helena Esparza (who is no longer employed by Irell), was sufficiently trained and experienced with regard to entering assignment information in the patent docketing system to reflect changes in the ownership of patents. Her competence was sufficiently established by the evidence provided to the USPTO. The reliance upon such employee represented the exercise of due care.

42.     The evidence presented at the USPTO clearly establishes the unavoidable nature of the failure to pay the maintenance fees in time to prevent the expiration of the Hifn Patents.

43.     The petitions were promptly filed after the patentee became aware of the expiration of the Hifn Patents. Hifn acted reasonably and prudently in its efforts to pay the maintenance fees for the Hifn Patents when it was made aware of the expiration of the Hifn Patents. Accordingly, Plaintiff has adequately shown that the delay in payment of the

maintenance fees were "unavoidable" under 35 U.S.C. § 41(c)(1) and 37 C.F.R. § 1.378(b), and thus, Plaintiff is entitled to reinstatement of the Hifn Patents.

44. The PTO's decision is inconsistent with the interpretation of what is required under 35 U.S.C. § 41(c)(1) for an "unavoidable delay." The PTO's decision is arbitrary and capricious. In making its decision, the PTO relied on factors and/or caselaw which Congress has not intended it to consider, the PTO failed to consider important aspects of the problem, the PTO offered explanations for its decisions that run counter to the evidence before the agency, and/or the decision by the PTO is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hifn respectfully prays for a judgment:

A. Reversing the PTO's decision denying the petitions to accept delayed payment of the maintenance fees for the Hifn Patents;

B. Directing the PTO to accept the maintenance fees for the Hifn Patents and to reinstate the Hifn Patents; and

C. Awarding Hifn such other and further relief, including equitable relief, as this Court may deem just and proper.

Respectfully submitted,

Dated: December 20, 2007

FLIESLER MEYER LLP
Martin Fliesler (State Bar No. 073768)
Rex Hwang (State Bar No. 221079)
Julie Daniels Missud (SBN 219508)
650 California Street, 14th Floor
San Francisco, California 94108

Attorneys for Plaintiff
Hi/fn, Inc.

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

Dated: December 20, 2007

Respectfully submitted,

FLIESLER MEYER LLP
Martin Fliesler (State Bar No. 073768)
Rex Hwang (State Bar No. 221079)
650 California Street, 14th Floor
San Francisco, California 94108

Attorneys for Plaintiff
Hi/fn, Inc.