JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
ABRAHAM A. SIMMONS (SBN 146400)
Assistant United States Attorney

    450 Golden Gate Avenue, P.O. Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7264
    Facsimile: (415) 436-6748
    Email: abraham.simmons@usdoj.gov

Attorneys for Federal Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| HI/FN, INC., | ) | |
|                     Plaintiff, | ) | No. C 07-6430 MMC |
| | ) | **E-FILING CASE** |
|      v. | ) | |
| | ) | |
| JONATHAN W. DUDAS, DIRECTOR OF | ) | **DEFENDANT'S OPPOSITION TO** |
| THE UNITED STATES PATENT & | ) | **HI/FN'S MOTION FOR SUMMARY** |
|  TRADEMARK OFFICE, | ) | **JUDGMENT** |
| | ) | |
|               Defendant. | ) | |

      Pursuant to this Court's order filed March 5, 2008, Defendant, Jonathan W. Dudas, Director

of the U.S. Patent and Trademark Office, hereby submits the following Opposition to Hi/Fn's Motion

For Summary Judgment.

# TABLE OF CONTENTS

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.   Expiration of the '307 Patent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      B.   Hi/fn's Initial Petition to Revive the '307 Patent. . . . . . . . . . . . . . . . . . 6

      C.   USPTO's Initial Decision. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      D.   Hi/fn's Request for Reconsideration and USPTO Final Decision. . . . . . . . . 8

III.  ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      A.   Legal Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            1.   The Standard on Summary Judgment Motions. . . . . . . . . . . . 10

            2.   The Standard of Review for a USPTO Decision on a Petition to Reinstate an Expired Patent. . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            3.   The Unavoidable Delay Standard is Strict. . . . . . . . . . . . . . . . 11

      B.   Hi/fn's Summary Judgment Motion Fails To Show That The USPTO Abused Its Discretion In Denying Hi/fn's Petition. . . . . . . . . . . . . . . . . . . . . . . . . 12

            1.   The USPTO properly found that Hi/fn had failed to act reasonably and prudently. . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            2.   Kuyper did not have any steps in place to ensure timely payment of the '307 maintenance fees. . . . . . . . . . . . . . . . . . . . . . . . . . 16

            3.   I&M's clerical error does not render the delay unavoidable. . . 17

IV.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*Burandt v. Dudas*, 496 F. Supp. 2d 643 (E.D. Va. 2007). . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 12, 16

*California Med. Prods., Inc. v. Tecnol Med. Prods., Inc.*,
    921 F. Supp. 1219 (D. Del. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16, 18

*Camp v. Pitts*, 411 U.S. 138 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Commissariat A L'Energie Atomique v. Watson*,
    274 F.2d 594 (D.C. Cir. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Dickinson v. Zurko*, 527 U.S. 150 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Douglas v. Manbeck*, 21 USPQ2d 1697 (E.D. Pa. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Femspec v. Dudas*, 2007 U.S. Dist. LEXIS 8482 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . 12

*Katrapat, In re*, 6 USPQ2d 1863 (Comm'r Pat. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Kim, In re*, 12 USPQ2d 1595 (Comm'r Pat. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16,

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mattullath, In re*, 38 App. D.C. 497 (1912). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*R.R. Donnelley & Sons v. Dickinson*,
    123 F. Supp. 2d 456 (N.D. Ill. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 16, 17

*Ray v. Lehman*, 55 F.3d 606 (Fed. Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 12

*Smith v. Mossinghoff*, 671 F.2d 533 (D.C. Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**STATUTES**                                                                                 **PAGE(S)**

35 U.S.C. § 41(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

5 U.S.C. § 701. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5 U.S.C. § 706(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**RULES/REGULATIONS**                                                    **PAGE(S)**

37 C.F.R. § 1.20. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

37 C.F.R. § 1.378(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 9

37 C.F.R. § 1.378(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 7, 8, 13, 17

37 C.F.R. § 1.378(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

37 C.F.R. § 1.378(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Fed. R. Civ. P. 56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Fed. R. Civ. P. 56(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10


**OTHER AUTHORITIES**                                                     **PAGE(S)**

H.R. Rep. No. 97-542, at 8 (1982),
        *as reprinted in* 1982 U.S.C.C.A.N. 765, 772 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.    INTRODUCTION**

3        The nine patents involved in this lawsuit (Petition Patents) expired during the period between

4   March, 2003, and September, 2004, because Plaintiff Hi/Fn, Inc. (Hi/Fn) failed to pay the statutorily-

5   required maintenance fees.  Hi/fn petitioned the United States Patent and Trademark Office (USPTO)

6   to reinstate the expired patents under the stringent "unavoidable delay" standard.  The issue in this

7   action brought under the Administrative Procedures Act (APA) is whether the USPTO's Final

8   Decision is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law."

9   Hi/fn has moved this Court to grant summary judgment in its favor and order the USPTO to reinstate

10  Hi/fn's expired patents based upon the record established for United States Patent No. 5,003,307

11  ('307 patent).  This Court should deny Hi/fn's Motion for Summary Judgment because Hi/fn has

12  failed to demonstrate error in the USPTO's Final Decision under the APA.

13  **II.    STATEMENT OF THE FACTS**

14       The facts regarding the expiration and attempted reinstatement of the representative '307

15  patent are laid out in the Memorandum of Points and Authorities submitted in support of the

16  USPTO's Cross-Motion for Summary Judgment.  The USPTO repeats them here for the convenience

17  of the reader.

18       The '307 patent issued on March 26, 1991.  The third (eleven-and-a-half years) maintenance

19  fee[1] was due September 26, 2002.  It could have been paid (1) during the period from March 26,

20  2002, through September 26, 2002, or (2) with a surcharge during the period from September 27,

21  2002, through March 26, 2003.  *See* US00014.  Hi/fn did not pay the required fee during those

22  periods.  Accordingly, the '307 patent expired at midnight, March 26, 2003.  *See id.*

23  **A.    Expiration of the '307 Patent**

24       The original assignee of the '307 patent – a company called Stac Electronics, Inc. (Stac) –

25

26

27       [1]    For a brief background on patent maintenance fees, *see* the USPTO's Cross-Motion for

28  Summary Judgment at Section I.A.

transferred ownership of the '307 patent to Hi/fn[2] on November 21, 1996. The assignment was recorded at the USPTO. However, Irell & Manella (I&M), the law firm that prosecuted the '307 patent, never updated its own docket system to reflect the assignment. *See generally* US00266-70. I&M's failure to update its system meant that its records still identified Stac as the owner of the '307 patent. *See* US00270-71.

Hi/fn did not explain to the USPTO why the ownership status of the '307 was not updated in I&M's docket system, other than characterizing it as an "inadvertent clerical error." US00038; US00266. According to Bruce Kuyper (Kuyper) – who was responsible for Stac and Hi/fn matters at I&M in 1996 – the procedure at I&M was to have a patent paralegal record the assignment at the USPTO, and then give a copy of the assignment to the patent docket clerk to update I&M's system accordingly. *See* US00317-18.

This procedure was not followed for the '307 patent. Kuyper explained that "[t]o the best of my recollection, the principle patent paralegal was unavailable at the time I wanted to have the assignments recorded in the USPTO." US00317. Thus, Kuyper gave the task to Mary Cohen (Cohen) – who worked on trademark matters – believing that her experience in recording trademark assignments would suffice. *See* US00317-18. While the assignment was recorded with the USPTO, Hi/fn's Initial Petition to reinstate the '307 patent indicated that it was not given to the docket clerk and not entered into I&M's docket system:

> [n]ormally, the principal patent paralegal would have given a copy of the patent assignment to the docket clerk with instructions to change the docket records to reflect the change of client and ownership to Hi/fn. Apparently, this was not done in this case. Given that this error was made almost 10 years ago, the events that led to this error can no longer be recreated.

US00047. In the subsequent Reconsideration Petition filed by Hi/fn after the USPTO dismissed the Initial Petition, Hi/fn provided additional information, stating that the assignments were received by a

---

[2]    Hi/fn is a spin-off company related to Stac. *See* US00267.

docket clerk named Helen Esparza (Esparza).[3]  *See* US00017; US00263.  However, Hi/fn did not

provide any statement from Esparza, or explain why Esparza failed to update I&M's docket system.

Kuyper subsequently left I&M at the end of March, 2000, and went to the law firm of Latham

& Watkins (L&W).  *See* US00270.  On June 15, 2000, Stac informed I&M that Kuyper would

represent Stac in all matters previously handled by I&M, and instructed I&M to transfer all Stac

matters to Kuyper.[4]  *See id.*; US00058.  On June 28, 2000, I&M generated a status report of all Stac

matters using its docket system.  The report contained the '307 patent, along with the the other

Petition Patents.  Accordingly, Norman Brunell (Brunell) at I&M sent those files to Kuyper at L&W.

*See* US00270-71.

In the cover letter accompanying the transferred files, I&M explicitly stated that "we [I&M]

have <u>removed these applications from our docket</u> and expect that you will promptly notify the Patent

and Trademark Office and the foreign associates of the transfer of responsibility as appropriate."

US00058 (emphasis added).  Kuyper stated that he did not review the files he received from I&M for

"prosecution[-]related issues" because he thought that he would be handling licensing and other

issues.  US00319-20.  More importantly, Kuyper averred that he "viewed Irell as retaining

responsibility for the payment of maintenance fees on any issued U.S. patents."  US00320.  Indeed,

Kuyper stated that he "could not accept responsibility for the payment of maintenance fees because

Latham did not and does not have a patent docketing system."  US00320; *see* US00319.

Subsequent events involving the principle players in 2000 and then, more crucially, in 2002,

also bear on the expiration and attempted reinstatement of '307 patent.

1.    On October 11, 2000, Brunell received a telephone message from Cliff Flowers

(Flowers), Stac's Chief Financial Officer, indicating that a matter in a recent I&M invoice – "Stac

---

[3]    This additional fact appears to be the only substantive factual difference between Hi/fn's
Initial and Reconsideration Petitions.

[4]    On June 23, 2000, Hi/fn also indicated to Brunell at I&M that Kuyper would be handling
some Hi/fn matters currently managed by I&M, but Hi/fn apparently did not follow-up with Brunell
about sending any such files to Kuyper.  *See* US00333.

matter 135" relating to "data compression" technology – should be transferred to Hi/fn.  US00272.

Brunell found "many Stac patent matters that had the words 'data compression' in their name" in

I&M's records.  US00273.

On October 31, 2000, Brunell sent a letter to Kuyper indicating that "[I&M] transferred the

cases identified as STAC cases but have been instructed by Cliff Flowers that the Data Compression

cases should be transferred to Hi/fn."  US00069.  Brunell asked Kuyper to tell him whether I&M

should transfer those Hi/fn matters to him, or to return those cases back to I&M if "you are not going

to take" them.  *Id.*  The record does not indicate that Kuyper responded.

Some one-and-a-half years later – on April 8, 2002 – Brunell sent an email to Kuyper on the

same subject.  *See* US00070.  Kuyper responded with confusion, indicating that he was not sure what

Brunell wanted.  *See id.*  Kuyper confirmed that he had the Stac matter 135 files to which Brunell

referred, and asked Brunell to let him know if he should send that file (and any others) back.  *See id.*

The record does not indicate that Brunell ever responded, or that Kuyper ever pursued the matter with

I&M or Hi/fn.

2.    Around the same time – May 15, 2002 – Kuyper was "somehow alerted" that fees for

two "old Stac" patents were coming due.  US00273; *see* US00321.  In Kuyper's subsequent email to

Hi/fn asking if Hi/fn wanted him to pay the two fees, Kuyper tellingly noted that Hi/fn may have

already "received notice of this from Irell & Manella or from Computer Patent Annuities (the service

that Irell used to make the maintenance fee payments in the past)."  US00073.  Hi/fn responded the

same day that Kuyper should pay the fees, which he did.  *See* US00074-75; US00320-21.

Kuyper contacted Hi/fn about these fees "[a]s a courtesy."  US00321.  Kuyper still believed

that I&M "continued to maintain responsibility for the payment of maintenance fees for Hi/fn patents

that had issued before my departure from Irell even though I may have had physical possession of the

files that contained the papers" relating to those patents.  *Id.*

3.    On June 17, 2002, Jane Sinclair (Sinclair) at Hi/fn emailed Kuyper with a list of Hi/fn

patents (which included the '307 patent) and asked him to "see if this agrees with your records."

US00076-79.  Kuyper never reviewed the list or responded substantively to the email.  *See* US00274;

*see also* US00080; US00322.

4

4.      On November 8, 2002, Brunell had a conversation with Joanne Endow (Endow), Corporate Finance Director at Hi/fn, and followed up with a confirmatory letter. *See* US00082-83; US00275. In that letter, Brunell included Table A, listing five patents for which I&M was scheduled to pay maintenance fees. *See* US00082-83. The '307 patent was not on that list. *See id.* Conversely, Brunell identified "nine U.S. patents, assigned to HIFN from STAC, which we are not scheduled to maintain," and indicated that "[t]here are other patents or applications that are closely related to those listed which should also be reviewed to determine if they are, or should be, assigned to HIFN." *Id.*

On November 12, 2002, Jonathan Steinberg (Steinberg) of I&M sent a similar letter to Kuyper, asking for the return of files assigned to Hi/fn that had been sent to Kuyper. *See* US00084-85. I&M also included a list of patents that "we believe may also belong to Hifn," asking Kuyper to confirm the "appropriate ownership." US00085. The '307 patent was included on that list. Kuyper "lost track of the letter"; the record does not indicate he responded. US00050; *see* US00322.

5.      The most critical event for the purposes of this lawsuit happened on December 23, 2002, when Brunell met with Endow to discuss the maintenance fee issues raised in Brunell's November 8, 2002 letter and related phone call. *See* US00277. At the meeting, Endow instructed I&M to "maintain the status quo." US00312; *see* US00337; US00277. The "status quo" to Endow meant that I&M and Kuyper would continue to "handle all patent matters for all files in [their] possession." US00312. Per Endow's instructions, Brunell did not take any action with respect to the '307 patent maintenance fees. *See* US00337.

Kuyper was not present at the December 23, 2002 meeting between Hi/fn and I&M. No one ever told Kuyper about the meeting, or Hi/fn's belief that he was monitoring the maintenance fees for the patents in his possession, which included the '307 patent. *See* US00278; US00323-24. Kuyper stated that he did not learn of the December, 2002 meeting, or Hi/fn's belief that he was handling any maintenance fee work for Hi/fn, until contacted for Hi/fn's reinstatement petition in late 2006/early 2007, some four years later. *See* US00323-24. Kuyper indicated that even if he had been told of the December, 2002 meeting, he would have "interpreted" Hi/fn's decision to "maintain the status quo" as "confirming my impression . . . that I was to continue to represent Hi/fn's interest relative to

1    licensing and possible litigation issues, rather than to represent Hi/fn by keeping track of the

2    deadlines for payment of maintenance fees" for Hi/fn patents.  US00323.

3    **B.    Hi/fn's Initial Petition to Revive the '307 Patent**

4         On November 22, 2006, Hi/fn learned from its licensee Hewlett Packard that the maintenance

5    fees for the '307 patent had not been paid and the patent had expired. *See* US00282.

6         On March 13, 2007 – almost four years after the '307 patent expired – Hi/fn filed a Petition to

7    Accept Delayed Payment of Maintenance Fees Under 37 C.F.R. § 1.378(b) for the '307 patent under

8    the stringent "unavoidable delay" standard (Initial Petition).  *See generally* US00036-55.  Under the

9    governing regulation, Hi/fn was required to show to the satisfaction of the Director that the delay in

10   paying the fee was unavoidable

11         since reasonable care was taken to ensure that the maintenance fee would be paid
           timely and that the petition was filed promptly after the patentee was notified of, or
12         otherwise became aware of, the expiration of the patent.

13   37 C.F.R. § 1.378(b)(3).  Such a showing must

14         enumerate the steps taken to ensure timely payment of the maintenance fee, the date
           and the manner in which patentee became aware of the expiration of the patent, and
15         the steps taken to file the petition promptly.

16   *Id.*

17         Hi/fn alleged that the delay in paying the maintenance fee for the '307 patent was unavoidable

18   "due to a docketing error and personnel change[,] which caused miscommunications among the

19   principals involved."  US00038.  Hi/fn maintained that the I&M clerical error led to the mistaken

20   transfer of the '307 patent file to Kuyper at L&W.  *Id.*  Because Kuyper "did not view himself as the

21   attorney responsible for payment of maintenance fees for Hi/fn" but believed that I&M still retained

22   that responsibility, the delay in the fee was "unavoidable."  *Id.*

23   **C.    USPTO's Initial Decision**

24         On April 26, 2007, the USPTO dismissed Hi/fn's Initial Petition (Initial Decision).  *See*

25   *generally* US00001-13.  The USPTO found that Hi/fn had failed to show that adequate steps  were

26   taken by or on behalf of Hi/fn to assure timely payment of the '307 maintenance fees after the

27   December 23, 2003 meeting between Hi/fn and I&M.  *See*  US00006.  At that point, Hi/fn instructed

28   I&M not to take any action with respect to the '307 patent.  The record shows that no party – most

notably Hi/fn or Kuyper – "had any steps in place to ensure payment of the maintenance fee," which "is not unavoidable delay." US00006 (citing numerous cases standing for that legal proposition). While Hi/fn maintained that it believed Kuyper was handling the fees, Hi/fn's failure to clarify each party's responsibilities and assure that that someone was handling the maintenance fee "does not represent the due care and diligence of prudent and careful persons with respect to their most important business" as required under 37 C.F.R. § 1.378(b)(3). US00008. Hi/fn's failure to communicate with Kuyper was "not the action of a prudent and careful person with respect to his most important business." US00008. Hi/fn knew of confusion surrounding its patents and the fact that fees were due. *See* US00007-8. The USPTO explained that "delay resulting from a lack of proper communication as to the responsibility for scheduling and payment of a maintenance fee does not constitute unavoidable delay." US00007 (citing *In re Kim*, 12 USPQ2d 1595 (Comm'r Pat. 1988), and *Ray v. Lehman*, 55 F.3d 606, 610 (Fed. Cir. 1995)). Accordingly, the USPTO dismissed Hi/fn's Initial Petition.

The USPTO rejected Hi/fn's argument that I&M's clerical error rendered the delay unavoidable. The USPTO noted the factors to be considered for such a showing, including that (1) the error was the cause of the delay, and (2) that the "employee(s) was sufficiently trained and experienced with regard to the functions and routine for its performance that reliance upon such an employee represented the exercise of due care." US00009 (citations omitted). The USPTO first noted all the evidence that Hi/fn had failed to provide, including statements from key players (such as Cohen, who Hi/fn blamed for the error in its Initial Petition) and information regarding the docketing system, employee training, etc. *See* US00007; US00009. Based on the evidence offered by Hi/fn, the USPTO found that Hi/fn had failed to meet requirements (1) and (2). *See* US00010. Kuyper's decision to use Cohen did not satisfy the standard, since she was not a patent paralegal. *See* US00010. More importantly, the USPTO explained that any clerical error is "trumped by Hi/fn's subsequent failure to obligate another to track and pay the fee, or itself track and pay the fee." US00011.

Lastly, even if Hi/fn could establish that the clerical error rendered the delay unavoidable, "it would still be necessary to demonstrate why the lack of assignee diligence for a period of three years

should not be fatal to reinstatement." US00012 (legal citations omitted). That is, Hi/fn's lack of diligence in discovering and acting on the expiration of the '307 patent between March 26, 2003 (when the patent expired) and December, 2006 (when Hi/fn began investigating the matter) "would overcome and supersede any delay caused by its representatives." US00012.

The USPTO informed Hi/fn that they could submit a petition for reconsideration within two months. US00001.

### D.    Hi/fn's Request for Reconsideration and USPTO Final Decision

On June 29, 2007, Hi/fn filed a Petition for Reconsideration under 37 C.F.R. § 1.378(e) (Reconsideration Petition) of the Initial Decision. *See generally* US00261-288. Hi/fn reasserted its contention that the docketing error "unleashed a chain of events" causing non-payment of the maintenance fee. Hi/fn re-alleged the facts as presented in its Initial Petition, with the addition of identifying Helen Esparza as the docket clerk who failed to update I&M's docket system. *See* US00263; US00283.

Hi/fn argued the clerical error "could have been rectified" at the December 23, 2002 meeting between I&M and Hi/fn only when viewed in "hindsight." US00264. Hi/fn maintained that the conduct of Hi/fn post-meeting was "reasonably prudent based on their understanding of the situation at that time." US00264.

Hi/fn also disagreed with the USPTO's position that Hi/fn need demonstrate diligence between the expiration of the patent and Hi/fn's first steps to monitor the status of the '307 patent. *See* US00287. Hi/fn maintained that "there is no requirement for diligence in the period following expiration of the patent until patentee was notified of, or otherwise became aware of, the expiration of the patent." US00287.

On October 24, 2007, the USPTO issued a decision denying Hi/fn's Reconsideration Petition (Final Decision). *See generally* US00014-29. The USPTO again concluded that Hi/fn's failure to assure that the maintenance fees for its patents were being properly monitored and paid, either by handling the matter itself or through its attorneys, was not unavoidable under 37 C.F.R. § 1.1378(b)(3). *See* US00020.

The USPTO found that the failure of any of the parties – Hi/fn, Kuyper, or I&M – to have

"any steps in place to ensure payment of the maintenance fee" at the time the maintenance fee was due "is fatal to reinstatement."  US00021 (citations omitted); *see generally* US00021-22.  The USPTO concluded that the situation arose because the parties <u>failed to communicate</u> and "[t]hat all parties, particularly [Hi/fn] and Kuyper did not clarify each other's meaning and intent, and thus, their own obligation(s) in this matter simply does not represent the due care and diligence of prudent and careful persons with respect to their most important business."  US00027.  The USPTO noted that Hi/fn's "blind faith" in assuming that Kuyper was tracking the fee "is not the action of a prudent and careful person with respect to his or her most important business."  US00021 (citing *Burandt v. Dudas*, 496 F. Supp. 2d 643, 650 (E.D. Va. 2007)).  Hi/fn's blind reliance was particularly unreasonable here given the confusion surrounding the Petition Patents.  US00027; *see also* US00022 (concluding that Hi/fn  "knew, or should have known" that Kuyper was not handling the fees given that Hi/fn could not even get Kuyper to respond to its June 17, 2002 email asking him to compare his files to their list of Hi/fn patents); US00026-27 (noting record evidence of confusion between the parties regarding who had the files and was handling the maintenance fees).  Toward that end, nothing in the record established that Hi/fn had "clearly and unambiguously" informed Kuyper that "he was being relied upon to track the maintenance fee" for the '307 patent.  US00022 n.1.

The USPTO again rejected Hi/fn's theory that the clerical error rendered the maintenance fee delay "unavoidable."  Fundamentally, "the delay is not due to the alleged clerical error(s) of Esparza and/or Cohen, but due to Hi/fn's own action or inaction in this case" to assure that steps were in place to have the fees tracked and paid after the December 23, 2002 meeting.  US00024.  Thus, the USPTO concluded that the docketing error "cannot provide an adequate basis for showing to the satisfaction of the Director that the delay was unavoidable within the meaning of 35 U.S.C. § 41(c) and 37 C.F.R. § 1.378(b)."  US00024; *see also* US00026 ("[A]ny [docketing system] errors due to Kuyper, Esparza, or Cohen are trumped by Hi/fn's subsequent failure – on and after December 23, 2003, to obligate another to track and pay the fee, or track and pay the fee.").  Moreover, the USPTO concluded that the record failed to show that Esparza was adequately trained and supervised.  US00025-26.  The USPTO found troubling Hi/fn's contention that the docket system and related employees were reliable given

1   that normal procedures were not followed for 11 of 12 Hi/fn patents.[5]  US00022.

2        Finally, the USPTO reiterated that Hi/fn's failure to exercise diligence across the entire period

3   of delay in payment of the maintenance fee was "fatal to reinstatement" of the '307 patent.  US00028.

4   The USPTO rejected Hi/fn's position that there was no requirement of diligence between patent

5   expiration and discovering/remedying the expiration.  US00028-29 (citing *Burandt v. Dudas*, 496 F.

6   Supp. 2d 643, 646 (E.D. Va. 2007), and *Douglas v. Manbeck*, 21 USPQ2d 1697, 1700 (E.D. Pa.

7   1991) ("The plaintiff may well have not known that his application was abandoned, but the test is

8   whether he exercised due diligence to find out and correct the problem.")).  The USPTO concluded

9   that Hi/fn had failed to take any action during the 3 ½ year period between expiration on March 26,

10  2003, and December, 2006, "to either check the status of the patent or [i]nquire of either of its 2 law

11  firms or even the USPTO, as to whether the fee had been paid and this patent maintained in force."

12  US00029.

13  **III.   ARGUMENT AND AUTHORITIES**

14      **A.   Legal Standards**

15          **1.   The Standard on Summary Judgment Motions**

16        Summary judgment is appropriate where there are no genuine issues of material fact, and the

17  moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v.*

18  *Catrett*, 477 U.S. 317, 322 (1986).  In determining whether a genuine issue of material facts exists, a

19  court must view all facts, and draw all reasonable inferences, in the light most favorable to the

20  non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

21  The party opposing summary judgment "may not rest upon the mere allegations or denials of the

22  adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue

23  for trial."  Fed. R. Civ. P. 56(e).  Where, as here, summary judgment is based on an administrative

24  record, there can be no genuine issue of material fact concerning the contents of the record.  *See*

26          [5]       There were originally a total of 12 patents assigned from Stac to Hi/fn.  *See* US00013;

27  US00316 (¶ 6).  Of these, only the assignment for U.S. Patent No. 4,701,745 – which Hi/fn refers

28  to as the "Waterworth Patent" – was recorded by I&M in its docket system.  *See* US00269.

1   *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *R.R. Donnelley & Sons v. Dickinson*,123 F. Supp. 2d 456,

2   458 (N.D. Ill. 2000).

### 2.     The Standard of Review for a USPTO Decision on a Petition to Reinstate an Expired Patent

The APA, 5 U.S.C. § 701 et seq., governs this Court's review of the PTO's decision to deny

Hi/fn's petition to reinstate an expired patent for failure to pay maintenance fees. *Ray*, 55 F.3d at

608. Under the APA, an agency action may be set aside only if it is "arbitrary, capricious, an abuse of

discretion or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) (2006); *Dickinson v.

Zurko*, 527 U.S. 150, 164 (1999). The scope of review under this standard is "narrow" and "a court is

not to substitute its judgment for that of the agency." *Motor Vehicles Mfrs. Ass'n v. State Farm Mut.

Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Ray*, 55 F.3d at 608; *Commissariat A L'Energie

Atomique v. Watson*, 274 F.2d 594, 596-597 (D.C. Cir. 1960) (PTO has a "large measure of

discretion" in determining whether a delay is "unavoidable").

### 3.     The Unavoidable Delay Standard is Strict

The "unavoidable delay" standard is a heightened standard that is not satisfied by a patentee

who claims that a delay was merely unintentional. As previously discussed, the USPTO has the

discretion to accept late maintenance fee payments up to 24 months after the end of the six-month

grace period if a patentee shows that his late payment was merely <u>unintentional</u>. *See* 35 U.S.C. §

41(c)(1); 37 C.F.R. § 1.20. A patentee seeking to show unintentional delay usually need only provide

a statement to the USPTO that the delay was unintentional, and pay the appropriate additional fees.

*See* 37 C.F.R. § 1.378(c); M.P.E.P. § 711.03(c). After this period ends, however, the USPTO may

accept late maintenance fees only "if the delay is shown to the satisfaction of the Director to have

been <u>unavoidable</u>." 35 U.S.C. § 41(c)(1) (emphasis added); *see also* H.R. Rep. No. 97-542, at 8

(1982), *as reprinted in* 1982 U.S.C.C.A.N. 765, 772 (providing that "[a]fter the expiration of a

reasonable period of time, the patentee would bear <u>a heavy burden of proof</u> that the delay was

unavoidable" (emphasis added)). Serious policy considerations necessitate an exacting standard:

> [t]he unavoidable delay standard is necessarily stringent [because] [i]ndividuals and
> entities who are making business decisions have the right to rely on the fact that if a
> patent lain dormant to premature expiration [for some period of time], it will be the
> rare case – one presenting extraordinary facts demonstrating that there truly was

11

nothing else that the patent owner could have done – that will cause the USPTO to reinstate such a patent and expose others to liability.

*Burandt v. Dudas*, 496 F. Supp. 2d 643, 652 (E.D. Va. 2007); *see also Femspec v. Dudas*, 2007 U.S. Dist. LEXIS 8482, at *28-30 (N.D. Cal. 2007) (rejecting argument that legislative history "reflects an intent to relax the 'unavoidable delay' standard . . . even with its sometimes harsh results").

A patentee seeking to reinstate an expired patent under this heightened standard bears the burden of proving that his delay was unavoidable. *See Donnelley*, 123 F. Supp. 2d at 459. In doing so, the patentee must, *inter alia*, provide evidence showing that "reasonable care was taken to ensure that the maintenance fee would be paid timely and that the petition was filed promptly after the patentee was notified of, or otherwise became aware of, the expiration of the patent"; and "enumerate the steps taken to ensure timely payment of the maintenance fee, the date and the manner in which patentee became aware of the expiration of the patent, and the steps taken to file the petition promptly." 37 C.F.R. § 1.378(b); *see also Ray*, 55 F.3d at 608.

On review, a court must consider "whether the party responsible for payment of the maintenance fee exercised the due care of a reasonably prudent person." *Ray*, 55 F.3d at 609; *Femspec*, 2007 U.S. Dist. LEXIS 8482, at *16. Courts have interpreted this to be the diligence "'generally used and observed by prudent and careful men in relation to their most important business.'" *Donnelley*, 123 F. Supp. 2d at 459 (quoting *In re Mattullath*, 38 App. D.C. 497 (1912)). "Whether or not a delay is unavoidable is decided on a case-by-case basis, taking all of the facts and circumstances into account." *Id.* (citing *Smith v. Mossinghoff*, 671 F.2d 533, 538 (D.C. Cir. 1982)).

## B.    Hi/fn's Summary Judgment Motion Fails To Show That The USPTO Abused Its Discretion In Denying Hi/fn's Petition

Hi/fn's Motion for Summary Judgment (Hi/fn S.J. Mem.) asserts that the USPTO's decision denying reinstatement of the '307 patent "constitutes arbitrary and capricious agency action." Hi/fn S.J. Mem. at ii. However, none of Hi/fn's arguments show error under that standard in the USPTO's Final Decision.

/ / /

/ / /

12

### 1. The USPTO properly found that Hi/fn had failed to act reasonably and prudently

A patent owner is charged with assuring timely payment of the maintenance fee, either by monitoring and paying the fee itself or obligating another to handle that important task for it.  Where that fee is not timely paid and the patent owner seeks to revive the patent based upon a showing that the delay in payment was "unavoidable," the patent owner must show that, at the time of expiration, it had acquitted itself as a reasonably prudent businessman would in attending to the handling of his most important business matters.

As demonstrated in the USPTO's Cross-Motion for Summary Judgment (filed concurrently with this Opposition Motion), the USPTO correctly found that the record failed to demonstrate that Hi/fn had an adequate system in place – either administered by itself or by one of its law firms  – to ensure that the '307 maintenance fee would be paid at the time the '307 patent expired on March 26, 2003.  Hi/fn argues that in reaching its conclusion, the USPTO improperly "limited its analysis to the fact that there was no express arrangement between Hifn and Kuyper regarding the payment of maintenance fees once Kuyper began working at Latham." Hi/fn S.J. Mem. at 13.  Hifn posits that it was justified in relying on Kuyper to handle its fees without an express agreement, citing *California Med. Prods. Inc. v. Tecnol Med. Prods., Inc.*, 921 F. Supp. 1219 (D. Del. 1995).  Hi/fn's argument fails to show error in the USPTO's Final Decision for several reasons.

First, the USPTO's decision is not based on the absence of an express agreement between Hi/fn and Kuyper to handle the '307 maintenance fees.  The Final Decision clearly indicates that unavoidable delay under 37 C.F.R. § 1.378(b)(3) had not been shown because <u>none</u> of the players here – Hi/fn, Kuyper, or I&M – had any steps in place to ensure timely payment of the fee at the time of expiration.  *See, e.g.*, US00021.  The USPTO found this conclusion was based, in part, on Hi/fn's failure to communicate with Kuyper after the December 23, 2002 meeting and confirm its assumption that Kuyper was handling the maintenance fees.  *See, e.g.*, US00023 ("What all parties are now confronted with is the results from the proverbial 'failure to communicate.'); US00026-27 ("That all parties failed to take adequate steps to ensure that each fully understood the other party's meaning,

13

1  and thus, their own obligation in this matter does not reflect the due care and diligence of prudent and

2  careful persons with respect to their most important business.").

3      Indeed, Hi/fn expressly told I&M not to handle the '307 maintenance fees at the December 23,

4  2002 meeting.  At that point, Hi/fn was aware of confusion surrounding the location of the patents

5  and responsibility for the maintenance fees, and Kuyper's conduct with respect to Hi/fn's patents.

6  Given those facts, Hi/fn's failure to just simply talk to Kuyper – who was not at the December

7  meeting – and make sure Kuyper was aware of Hi/fn's belief that he was obligated to handle the fees

8  was not the conduct of a reasonably prudent person. *See, e.g.*, US00027 ("That all parties,

9  particularly Endow and Kuyper did not clarify each other's meaning and intent, and thus, their own

10  obligation(s) in this matter simply does not represent the due care and diligence of prudent and

11  careful persons with respect to their most important business.").  It is clear that "[a] 'failure to

12  communicate' which occurs because a party fails to clearly communicate their intentions does not

13  constitute unavoidable delay." *See In re Kim*, 12 USPQ2d 1595, 1603 (Comm'r Pat. 1988).  Thus, to

14  suggest that the USPTO's conclusion regarding Hi/fn's conduct turns on the absence of an express or

15  contractual agreement regarding maintenance fees reads the USPTO's Final Decision too narrowly

16  and ignores Hi/fn's failure to communicate with its own lawyer to confirm Hi/fn's assumptions

17  regarding maintenance fee obligations.

18      Second, Hi/fn's reliance upon *Tecnol* is misplaced because Hi/fn is not like the patentee in

19  *Tecnol*.  The patentee and the attorney in *Tecnol* both clearly understood that the attorney was

20  responsible for ensuring timely payment of the expired patent's maintenance fees, and that the

21  attorney had a primary and backup docketing system in place. *See Tecnol*, 921 F. Supp. at 1258.

22  Thus, the court concluded that the patentee "did not 'do nothing' to ensure that maintenance fees

23  were paid." *Id.* at 1259.  That is in stark contrast with the facts here, where not only was there no

24  meeting of the minds between patentee and attorney regarding the attorney's responsibility for the fee,

25  but the attorney did not have any steps in place to ensure timely fee payment.

26      Third, Hi/fn's contention that it was reasonable to assume that Kuyper was monitoring the

27  maintenance fees in the absence of an express agreement should be rejected. *See, e.g.*, Hi/fn S.J.

28  Mem. at 15, 21-22.  Hi/fn was aware as late as December 23, 2002, that there was confusion

14

regarding its patents and maintenance fee responsibility when it met with I&M.  *See* US00022; US00027; US00082-83; US00335.  While Hi/fn saw fit to make explicit I&M's role by affirmatively telling I&M not to handle the fees for the patents-in-suit, Hi/fn inexplicably deemed it unnecessary to do the same with Kuyper.

Hi/fn asserts that it was reasonable for Hi/fn to believe that Kuyper was handling the maintenance fee on Hi/fn patents once he moved to L&W because Kuyper had paid maintenance fees while at I&M "without notifying Hifn or seeking its approval" and that "authorization" was never "expressly or implicitly revoked by Kuyper or Hifn."  Hi/fn S.J. Mem. at 15.  However, Hi/fn's belief is entirely inconsistent with Kuyper's conduct the lone time that Kuyper paid fees on Hi/fn patents while at L&W.  Instead of acting without Hi/fn's approval, Kuyper <u>asked</u> Hi/fn whether they wanted him to pay the fees, a complete reversal from his prior conduct.  Thus, the record demonstrates that Hi/fn's assumptions were inconsistent with Kuyper's actual conduct and Kuyper's understanding of the "status quo."  *See* US00323.  In such a situation, a reasonably prudent person handling their most important business should take the very simple and practical step of speaking with its attorney to confirm that both parties understand each other.  Thus, contrary to Hi/fn's position, the USPTO did not hold Hi/fn "to a higher standard than that of a reasonable person."  Hi/fn S.J. Mem.. at 18.  The USPTO simply expected Hi/fn and its attorney to remain reasonably diligent in communicating (as would be expected from the client/attorney relationship regarding any matter) to ensure timely payment of maintenance fees.  That Hi/fn failed to communicate with Kuyper is inconsistent with the conduct of a reasonable business person and "fatal to reinstatement."  US00023; *see* US00026; *Kim*, 12 USPQ2d at 1603; *Donnelley*, 123 F. Supp. 2d at 460-61.

Finally, even if Hi/fn is correct that their "blind" reliance upon Kuyper was consistent with the reasonable conduct of a person handing their most important business, that simply shifts the focus to Kuyper's conduct.  *See Tecnol*, 921 F. Supp. at 1259 ("[Patentee's] reliance upon [attorney] does not provide him with an absolute defense, but rather shifts the focus of the Court's inquiry to whether Strauss acted reasonably and prudently.").  Kuyper's conduct does not help Hi/fn, since Hi/fn is bound by that conduct and the record clearly demonstrates that Kuyper did not act reasonably and prudently.  *See Tecnol*, 921 F. Supp. at 1259.  The evidence demonstrates that Kuyper did not have a

system in place to ensure timely fee payment, that his law firm did not even had that capability, and that Kuyper failed to communicate adequately with his client Hi/fn.

### 2. Kuyper did not have any steps in place to ensure timely payment of the '307 maintenance fees

The complete absence of any system to ensure timely fee payment precludes a finding of unavoidable delay under 37 C.F.R. § 1.378(b)(3). *See* US00021 and case citations therein; *see, e.g.*, *Burandt*, 496 F. Supp. 2d at 650; *Donnelley*, 123 F. Supp. 2d at 460. As the USPTO correctly found, Kuyper did not have any steps in place to ensure the timely payment of the '307 maintenance fee. *See, e.g.*, US00021. Indeed, Kuyper stated that he "<u>could not accept</u> responsibility for the payment of maintenance fees" because his law firm lacked any system to track and pay maintenance fees. US00320 (emphasis added); *see* US00319-321. Accordingly, the USPTO correctly concluded that Kuyper's conduct was "fatal to reinstatement." US00021.

Hi/fn's position that the '307 patent should be reinstated because "Kuyper acted reasonably based upon his understanding of the scope of his engagement" (Hi/fn S.J. Mem. at 21-22) is incompatible with the strict standard of "unavoidable delay." The very essence of "unavoidable" delay is a showing that someone – whether the patentee or a third party – was taking reasonable steps to assure timely payment at the time of patent expiration. *See* US00021 (citing caselaw). Hi/fn cannot show "unavoidable" delay by relying on Kuyper's conduct, where Kuyper was not doing anything. Moreover, it is disingenuous for Hi/fn to argue that it was reasonable for Kuyper not to do anything because he reasonably believed he was not responsible, where that ignorance is the result of the parties' failure to properly communicate. Put another way, Hi/fn cannot insulate Kuyper's conduct by keeping him in the dark about its delegation to him of responsibility for the maintenance fees. *See Kim*, 12 USPQ2d at 1603; *Burandt*, 495 F. Supp. 2d at 652 (the USPTO will reinstate a patent under the unavoidable delay standard based upon "extraordinary facts demonstrating that there truly was nothing else that the patent owner could have done").

Moreover, as the USPTO found, Kuyper had failed to conduct himself diligently with respect to the Hi/fn patents and their fees. Kuyper was aware of confusion regarding the patents and their fees, yet failed to confirm his assumption that he had no responsibility in the matter. *See* US00026.

The record shows that Kuyper illustrated a general lack of diligence regarding Hi/fn's patents, failing to reply to at least three inquiries regarding the Hi/fn patents – two from I&M, and one from Hi/fn. *See* US00026.  Moreover, the cover letter that Kuyper received when I&M sent him the '307 patent file very clearly communicated that I&M was <u>not</u> maintaining responsibility for the patent or its fees: "<u>we [I&M] have removed these applications from our docket</u> and expect that you will promptly notify the Patent and Trademark Office and the foreign associates of the transfer of responsibility as appropriate." US00058-60 (emphasis added); *see* US00271.  Kuyper knew how I&M's maintenance fee system worked; if the '307 patent was not on their docket, then new provisions needed to be implemented to monitor the fees.

Additional doubt was cast on Kuyper's assumption that I&M was tracking the fees when Kuyper was "somehow alerted" that, despite his belief that I&M was responsible for the Hi/fn patent fees, the fees for the '142 and '690 patents had not been paid.  *See* US00321.  That Hi/fn responded not by telling Kuyper that I&M was taking care of it, but that Kuyper should pay the fees, was another clue that his assumptions may not be correct.  *See id.*  Yet Kuyper did not follow-up with Hi/fn or I&M.  In short, Kuyper's failure to take adequate steps to ensure that he and Hi/fn "fully understood the other party's meaning, and thus, their own obligation in this matter, does not reflect the due care and diligence of prudent and careful persons with respect to their most important business." US00026-27; *see also* US00027.

### 3.     I&M's clerical error does not render the delay unavoidable

Hi/fn continues to press that I&M's failure to update its docketing system rendered the delay "unavoidable." *See, e.g.*, Hi/fn S.J. Mem. at 20-21.  However, Hi/fn fails to show that the USPTO erred in rejecting I&M's clerical error as insufficient to show unavoidable delay.

Most importantly, as discussed above and in the USPTO's Cross-Motion for Summary Judgment, the '307 patent expired because Hi/fn did not have any system in place to have the fees monitored and paid after the December 23, 2002 meeting and prior to expiration in March, 2003.  As the USPTO correctly determined, I&M's clerical error had no bearing on Hi/fn's failure to communicate with Kuyper and confirm its assumption that Kuyper was handling the fees on its patents, "which <u>is</u> why the maintenance fee was not paid." US00024.  The USPTO also properly

1   found the corollary conclusion that the reliability of I&M's docketing system and personnel was a

2   moot point since Hi/fn had ceased relying upon them prior to the expiration of the '307 patent.  *See*

3   US00022-23.  For that reason, Hi/fn's insinuation that the fee would have been paid in September,

4   2002, but for the clerical error misses the point.  *See*  Hi/fn S.J. Mem. at 21.  The "unavoidable" delay

5   standard focuses on what steps were in place at the time of expiration; here, that date is March, 2003.

6   At that point, Hi/fn had expressly ceased relying on I&M for the '307 maintenance fees and had failed

7   to take adequate steps to assure that another party was ensuring timely payment.

8       Even if considered, Hi/fn failed to make a proper showing of unavoidable delay based upon

9   I&M's clerical error.  As the USPTO explained in its Initial Decision, Hi/fn would have had to show,

10  among other things, that (1) the error was the cause of the delay, and (2) that the "employee(s) was

11  sufficiently trained and experienced with regard to the functions and routine for its performance that

12  reliance upon such an employee represented the exercise of due care."  US00023-24 (citing *In re*

13  *Egbers*, 6 USPQ2d 1869, 1872 (Comm'r Pat. 1988), *rev'd on other grounds sub nom*, *Theodor Groz*

14  *& Sohne & Ernst Bechert Nadelfabrik KG v. Quigg*, 10 USPQ2d 1787 (D.D.C. 1988); *In re Katrapat*,

15  6 USPQ2d 1863, 1867-68 (Comm'r Pat. 1988)).  The USPTO properly concluded that neither factor

16  had been met.  *See* US00024.

17      First, the clerical error cannot be said to be the cause of the delay.  The practical result of

18  I&M's clerical error was the mistaken transmittal of the '307 patent to Kuyper and removal of the

19  patent from I&M's docket system.  Any effects stemming from those events was mitigated well prior

20  to the expiration of the patent.  Hi/fn knew that the Kuyper had the patent in his possession at least as

21  early as June 17, 2002.  *See, e.g.*, US00076-79 (the '307 patent is the fourth entry on the Hi/fn patent

22  list (US00078) sent by Sinclair at Hi/fn to Kuyper for his review).  Hi/fn also assumed that Kuyper

23  was handling the fees for the patents in his possession, making their removal from I&M's docket

24  system a moot point.  Thus, the USPTO correctly rejected Hi/fn's argument that the delay resulted

25  from a clerical error as

26      simply not convincing, as long prior to expiry, Hi/fn, notwithstanding the previous
        error in the handling of the assignment of this patent at I&M, was aware the Kuyper

27      had possession of this file . . . [and] had communicated with Kuyper regarding this
        patent.

28

1    US00023.

2    Second, Hi/fn did not demonstrate that I&M's reliance upon the employee responsible for the

3    error represented the exercise of due care.  The USPTO's Initial Decision laid out the factual showing

4    that Hi/fn needed to make on this factor in any further petitions, including

5    • "statements by all persons with direct knowledge" of the delay and

6    • information regarding the responsible employee, such as training, supervision,
     "examples of other work functions carried out, and checks on the described work which

7    were used to assure proper execution of assigned tasks."

8    US00002.  Hi/fn identified Esparza in its Petition for Reconsideration as the patent clerk who

9    committed the clerical error.  *See* US00017; US00263.  However, Hi/fn did not obtain a statement

10   from Esparza or "indicate what steps, if any, [Hi/fn] has taken to locate Esparza and obtain a

11   statement from her . . . ."  US00026.  Additionally, Hi/fn failed to adequately demonstrate that

12   Esparza was sufficiently trained and experienced in handling the tasks that led to the clerical error

13   such that reliance upon them represented the exercise of due care.  *See In re Katrapat*, 6 USPQ2d

14   1863, 1867-68 (Comm'r Pat. 1988).  The USPTO properly rejected the bald statement from Dee

15   Henderson of I&M that Esparza was "competent and not prone to making mistakes in entering

16   information from USPTO papers" (US00298) as inconsistent with the fact that the Hi/fn patent

17   assignments she apparently received were never recorded for 11 of the 12 patents.  *See* US00022-23;

18   US00025.  Moreover, Henderson did not provide any specific information regarding the training she

19   gave Esparza, or the nature and degree of supervision over her work, among other deficiencies.  *See*

20   US00026 (listing missing information regarding Esparza's competency); US00297-98 (¶ 10).  Thus,

21   the USPTO properly concluded that this factor had not been met.  *See* US00024.

22   **IV.    CONCLUSION**

23   Hi/fn's Summary Judgment Motion fails to demonstrate error in the USPTO's Final Decision

24   denying Hi/fn's reinstatement petition for the '307 patent.  Accordingly, this court should deny

25   / / /

26   / / /

27   / / /

28   / / /

19

1  Hi/fn's Motion.

2                                                    Respectfully submitted,

3                                                    JOSEPH P. RUSSONIELLO
                                                     United States Attorney

4

5                                                    _____/s/_____

6                                                    ABRAHAM A. SIMMONS
                                                     Assistant United States Attorney

7                                                    Attorneys for Defendant
   OF COUNSEL:
8  ROBERT J. MCMANUS
   WILLIAM LAMARCA
9  Associate Solicitors
   USPTO Office of the Solicitor
10 P.O. Box 15667
   Alexandria, VA 22215
11 (571) 272-9035

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28