JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
ABRAHAM A. SIMMONS (SBN 146400)
Assistant United States Attorney

    450 Golden Gate Avenue, P.O. Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7264
    Facsimile: (415) 436-6748
    Email: abraham.simmons@usdoj.gov

Attorneys for Federal Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HI/FN, INC.,                     )<br>        Plaintiff,     )<br>                    )<br>     v.               )<br>                    )<br>JONATHAN W. DUDAS, DIRECTOR OF )<br>THE UNITED STATES PATENT &amp;    )<br>TRADEMARK OFFICE,      )<br>                    )<br>        Defendant.   )<br>_____)| No. C 07-6430 MMC<br>**E-FILING CASE**<br><br>**DEFENDANT'S CROSS-MOTION FOR<br>SUMMARY JUDGMENT**<br><br>Date:      May 30, 2008<br>Time:     9:00 a.m.<br>Place:    Courtroom 7, 19th Fl.<br>Before:  Hon. Maxine M. Chesney |

PLEASE TAKE NOTICE that on Friday, May 30, 2008, at 9:00a.m., in the Courtroom of the Honorable Maxine M. Chesney, United States District Court Judge, Courtroom 7, 19th Floor, United States District Court, 450 Golden Gate Avenue, San Francisco, California, Defendant Jonathan W. Dudas, represented by the United States Attorney for the Northern District of California, through Abraham A. Simmons, Assistant United States Attorney, will move this Court for summary judgment, pursuant to Fed. R. Civ. P. 26, on the ground that there is no genuine issue as to any material fact in this lawsuit brought for review based upon the administrative record pursuant to the APA.  The record demonstrates that the United States Patent and Trademark Office did not abuse its discretion, or act arbitrarily or capriciously, in denying Hi/fn's attempts to reinstate the expired patent.  The motion will be based on this motion and memorandum of points and authorities, any evidence offered in support of the motion, the administrative record in this case, the arguments of the parties, and such other matters as may be presented to or considered by the Court.

# **TABLE OF CONTENTS**

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Brief Background on Patent Maintenance Fees . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Expiration of the '307 Patent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Hi/fn's Initial Petition to Revive the '307 Patent. . . . . . . . . . . . . . . . . . . . . 6

    C.    USPTO's Initial Decision. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    D.    Hi/fn's Request for Reconsideration and USPTO Final Decision. . . . . . . . . . 8

III.  ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.    Legal Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        1.    The Standard on Summary Judgment Motions. . . . . . . . . . . . 11

        2.    The Standard of Review for a USPTO Decision on a Petition to

            Reinstate an Expired Patent. . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        3.    The Unavoidable Delay Standard is Strict. . . . . . . . . . . . . . . . 12

    B.    The USPTO Properly Denied Hi/fn's Petition To Reinstate The '307 Patent. 13

        1.    Hi/fn had no system in place to ensure timely payment of the

            '307 patent maintenance fees at the time the patent expired. . 13

      2.    Hi/fn failed to act diligently in discovering and attempting to correct the

        expiration of the '307 patent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

iii

**TABLE OF AUTHORITIES**

**CASES**                                                                                              **PAGE(S)**

*Burandt v. Dudas*, 496 F. Supp. 2d 643 (E.D. Va. 2007). . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 12, 16

*California Med. Prods. v. Technol Med. Prod.*,
    921 F. Supp. 1219 (D. Del. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Camp v. Pitts*, 411 U.S. 138 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Commissariat A L'Energie Atomique v. Watson*,
    274 F.2d 594 (D.C. Cir. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Dickinson v. Zurko*, 527 U.S. 150 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Douglas v. Manbeck*, 21 USPQ2d 1697 (E.D. Pa. 1991) . . . . . . . . . . . . . . . . . . . . . . . 10, 16, 17

*Femspec v. Dudas*, 2007 U.S. Dist. LEXIS 8482 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . 13

*Kim, In re*, 12 USPQ2d 1595 (Comm'r Pat. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

*Korshinksy v. Godici*, 2005 U.S. Dist. LEXIS 20850 (S.D.N.Y. 2005),
    *aff'd sub nom, Korshinsky v. Dudas*,
    2007 U.S. App. LEXIS 7986 (Fed. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mattullath, In re*, 38 App. D.C. 497 (1912). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*R.R. Donnelley & Sons v. Dickinson*,
    123 F. Supp. 2d 456 (N.D. Ill. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 16

*Ray v. Lehman*, 55 F.3d 606 (Fed. Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12, 13

*Smith v. Mossinghoff*, 671 F.2d 533 (D.C. Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**STATUTES**                                                                                           **PAGE(S)**

35 U.S.C. § 154. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

35 U.S.C. § 41(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

35 U.S.C. § 41(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 10, 12

5 U.S.C. § 701. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

5 U.S.C. § 706(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

iv

**RULES/REGULATIONS**                                                **PAGE(S)**

37 C.F.R. § 1.20. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

37 C.F.R. § 1.378(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

37 C.F.R. § 1.378(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

37 C.F.R. § 1.378(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

37 C.F.R. § 1.378(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Civ. P. 56(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**OTHER AUTHORITIES**                                                **PAGE(S)**

H.R. Rep. No. 97-542 (1982),
    *as reprinted in* 1982 U.S.C.C.A.N. 765, 772. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

Manual of Patent Examining Procedure § 711.03(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

The nine patents involved in this lawsuit (Petition Patents) expired during the period between March, 2003, and September, 2004, because Plaintiff Hi/Fn, Inc. (Hi/Fn) failed to pay the statutorily-required maintenance fees.  Hi/fn petitioned the United States Patent and Trademark Office (USPTO) to reinstate the Petition Patents under the stringent "unavoidable delay" standard.  As shown by the facts in the administrative record established for United States Patent No. 5,003,307 ('307 patent)[1], the USPTO properly denied Hi/fn's petitions because Hi/fn failed to carry its burden of proving to the satisfaction of the Director that the entire delay in submitting the required fee was "unavoidable." The issue in this action brought under the Administrative Procedures Act (APA) is whether the USPTO abused its discretion in denying Hi/Fn's petition.  This Court should find that the USPTO properly denied Hi/fn's attempt to reinstate its patents because Hi/fn failed to meet the heavy burden of showing unavoidable delay within the meaning of 35 U.S.C. § 41(c)(1).

### A.     Brief Background on Patent Maintenance Fees

In designing the current patent system, Congress decided not to require patent applicants to pay all of the costs associated with examining a patent up front.  Instead, patent holders pay these costs over the life of the patent, with some of the costs being paid as separately-timed maintenance fees after a patent issues.  The amounts of these maintenance fees increase to reflect the patent's expected increase in value over time, and to allow applicants to avoid the higher maintenance fees by choosing to let their patents expire prematurely.  *See* 35 U.S.C. § 41(b).

The maximum term allowable for a patent is twenty years from the date its corresponding application was filed.  *See* 35 U.S.C. § 154.  To ensure this maximum term, maintenance fees must be paid at three-and-a-half, seven-and-a-half, and eleven-and-a-half year intervals from the date a patent issues.  *See* 35 U.S.C. § 41(b).  Patentees have a six-month grace period after each of these intervals

---

[1]     Per the Court's March 5, 2008 Order, Hi/fn selected the '307 patent as "the representative patent for purposes of deciding all issues in this case."  March 5, 2008 Order at 3, ¶ 1.  Thus, the Director will limit his discussion to the petition and decision for the '307 patent.

to make the required payments. *Id.* If the required fees are not paid within any of these six month grace periods, the patent will expire. *Id.*

The PTO may accept late maintenance fee payments up to 24 months after expiration if a patentee shows that his late payment was "unintentional." 35 U.S.C. § 41(c)(1); 37 C.F.R. § 1.20; 37 C.F.R. § 1.378(c); Manual of Patent Examining Procedure § 711.03(c) (M.P.E.P.). Once the 24-month period ends, the PTO may accept late maintenance fees only "if the delay is shown to the satisfaction of the Director to have been unavoidable." 35 U.S.C. § 41(c)(1); *see also* H.R. Rep. No. 97-542, at 8 (1982), as *reprinted in* 1982 U.S.C.C.A.N. 765, 772 (providing that "[a]fter the expiration of a reasonable period of time, the patentee would bear a <u>heavy burden of proof</u> that the delay was unavoidable") (emphasis added). Thus, the unavoidable delay standard is much stricter than the unintentional delay standard. *Id.*

## II.   STATEMENT OF THE FACTS

The '307 patent issued on March 26, 1991. The third (eleven-and-a-half years) maintenance fee was due September 26, 2002. It could have been paid (1) during the period from March 26, 2002, through September 26, 2002, or (2) with a surcharge during the period from September 27, 2002, through March 26, 2003. *See* US00014. Hi/fn did not pay the required fee during those periods. Accordingly, the '307 patent expired at midnight, March 26, 2003. *See id.*

### A.   Expiration of the '307 Patent

The original assignee of the '307 patent – a company called Stac Electronics, Inc. (Stac) – transferred ownership of the '307 patent to Hi/fn[2] on November 21, 1996. The assignment was recorded at the USPTO. However, Irell & Manella (I&M), the law firm that prosecuted the '307 patent, never updated its own docket system to reflect the assignment. *See generally* US00266-70. I&M's failure to update its system meant that its records still identified Stac as the owner of the '307 patent. *See* US00270-71.

Hi/fn did not explain to the USPTO why the ownership status of the '307 was not updated in I&M's docket system, other than characterizing it as an "inadvertent clerical error." US00038;

---

[2]   Hi/fn is a spin-off company related to Stac. *See* US00267.

US00266.  According to Bruce Kuyper (Kuyper) – who was responsible for Stac and Hi/fn matters at I&M in 1996 – the procedure at I&M was to have a patent paralegal record the assignment at the USPTO, and then give a copy of the assignment to the patent docket clerk to update I&M's system accordingly.  *See* US00317-18.

This procedure was not followed for the '307 patent.  Kuyper explained that "[t]o the best of my recollection, the principle patent paralegal was unavailable at the time I wanted to have the assignments recorded in the USPTO."  US00317.  Thus, Kuyper gave the task to Mary Cohen (Cohen) – who worked on trademark matters – believing that her experience in recording trademark assignments would suffice.  *See* US00317-18.  While the assignment was recorded with the USPTO, Hi/fn's Initial Petition to reinstate the '307 patent indicated that it was not given to the docket clerk and not entered into I&M's docket system:

> [n]ormally, the principal patent paralegal would have given a copy of the patent assignment to the docket clerk with instructions to change the docket records to reflect the change of client and ownership to Hi/fn.  Apparently, this was not done in this case.  Given that this error was made almost 10 years ago, the events that led to this error can no longer be recreated.

US00047.  In the subsequent Reconsideration Petition filed by Hi/fn after the USPTO dismissed the Initial Petition, Hi/fn provided additional information, stating that the assignments were received by a docket clerk named Helen Esparza (Esparza).[3]  *See* US00017; US00263.  However, Hi/fn did not provide any statement from Esparza, or explain why Esparza failed to update I&M's docket system.

Kuyper subsequently left I&M at the end of March, 2000, and went to the law firm of Latham & Watkins (L&W).  *See* US00270.  On June 15, 2000, Stac informed I&M that Kuyper would represent Stac in all matters previously handled by I&M, and instructed I&M to transfer all Stac matters to Kuyper.[4]  *See id.*; US00058.  On June 28, 2000, I&M generated a status report of all Stac

---

[3]  This additional fact appears to be the only substantive factual difference between Hi/fn's Initial and Reconsideration Petitions.

[4]  On June 23, 2000, Hi/fn also indicated to Brunell at I&M that Kuyper would be handling some Hi/fn matters currently managed by I&M, but Hi/fn apparently did not follow-up with Brunell about sending any such files to Kuyper.  *See* US00333.

matters using its docket system.  The report contained the '307 patent, along with the the other Petition Patents.  Accordingly, Norman Brunell (Brunell) at I&M sent those files to Kuyper at L&W. *See* US00270-71.

In the cover letter accompanying the transferred files, I&M explicitly stated that "we [I&M] have removed these applications from our docket and expect that you will promptly notify the Patent and Trademark Office and the foreign associates of the transfer of responsibility as appropriate." US00058 (emphasis added).  Kuyper stated that he did not review the files he received from I&M for "prosecution[-]related issues" because he thought that he would be handling licensing and other issues. US00319-20.  More importantly, Kuyper averred that he "viewed Irell as retaining responsibility for the payment of maintenance fees on any issued U.S. patents." US00320.  Indeed, Kuyper stated that he "could not accept responsibility for the payment of maintenance fees because Latham did not and does not have a patent docketing system." US00320; *see* US00319.

Subsequent events involving the principle players in 2000 and then, more crucially, in 2002, also bear on the expiration and attempted reinstatement of '307 patent.

1. On October 11, 2000, Brunell received a telephone message from Cliff Flowers (Flowers), Stac's Chief Financial Officer, indicating that a matter in a recent I&M invoice – "Stac matter 135" relating to "data compression" technology – should be transferred to Hi/fn.  US00272. Brunell found "many Stac patent matters that had the words 'data compression' in their name" in I&M's records.  US00273.

On October 31, 2000, Brunell sent a letter to Kuyper indicating that "[I&M] transferred the cases identified as STAC cases but have been instructed by Cliff Flowers that the Data Compression cases should be transferred to Hi/fn." US00069.  Brunell asked Kuyper to tell him whether I&M should transfer those Hi/fn matters to him, or to return those cases back to I&M if "you are not going to take" them. *Id.*  The record does not indicate that Kuyper responded.

Some one-and-a-half years later – on April 8, 2002 – Brunell sent an email to Kuyper on the same subject.  *See* US00070.  Kuyper responded with confusion, indicating that he was not sure what Brunell wanted.  *See id.*  Kuyper confirmed that he had the Stac matter 135 files to which Brunell referred, and asked Brunell to let him know if he should send that file (and any others) back.  *See id.*

The record does not indicate that Brunell ever responded, or that Kuyper ever pursued the matter with I&M or Hi/fn.

2.      Around the same time – May 15, 2002 – Kuyper was "somehow alerted" that fees for two "old Stac" patents were coming due. US00273; *see* US00321.  In Kuyper's subsequent email to Hi/fn asking if Hi/fn wanted him to pay the two fees, Kuyper tellingly noted that Hi/fn may have already "received notice of this from Irell & Manella or from Computer Patent Annuities (the service that Irell used to make the maintenance fee payments in the past)."  US00073.  Hi/fn responded the same day that Kuyper should pay the fees, which he did.  *See* US00074-75; US00320-21.

Kuyper contacted Hi/fn about these fees "[a]s a courtesy."  US00321.  Kuyper still believed that I&M "continued to maintain responsibility for the payment of maintenance fees for Hi/fn patents that had issued before my departure from Irell even though I may have had physical possession of the files that contained the papers" relating to those patents.  *Id.*

3.      On June 17, 2002, Jane Sinclair (Sinclair) at Hi/fn emailed Kuyper with a list of Hi/fn patents (which included the '307 patent) and asked him to "see if this agrees with your records."  US00076-79.  Kuyper never reviewed the list or responded substantively to the email.  *See* US00274; *see also* US00080; US00322.

4.      On November 8, 2002, Brunell had a conversation with Joanne Endow (Endow), Corporate Finance Director at Hi/fn, and followed up with a confirmatory letter.  *See* US00082-83; US00275.  In that letter, Brunell included Table A, listing five patents for which I&M was scheduled to pay maintenance fees.  *See* US00082-83.  The '307 patent was not on that list.  *See id.*  Conversely, Brunell identified "nine U.S. patents, assigned to HIFN from STAC, which we are not scheduled to maintain," and indicated that "[t]here are other patents or applications that are closely related to those listed which should also be reviewed to determine if they are, or should be, assigned to HIFN."  *Id.*

On November 12, 2002, Jonathan Steinberg (Steinberg) of I&M sent a similar letter to Kuyper, asking for the return of files assigned to Hi/fn that had been sent to Kuyper.  *See* US00084-85.  I&M also included a list of patents that "we believe may also belong to Hifn," asking Kuyper to confirm the "appropriate ownership."  US00085.  The '307 patent was included on that list.  Kuyper "lost track of the letter"; the record does not indicate he responded.  US00050; *see*

US00322.

5.     The most critical event for the purposes of this lawsuit happened on December 23, 2002, when Brunell met with Endow to discuss the maintenance fee issues raised in Brunell's November 8, 2002 letter and related phone call. *See* US00277.  At the meeting, Endow instructed I&M to "maintain the status quo."  US00312; *see* US00337; US00277.  The "status quo" to Endow meant that I&M and Kuyper would continue to "handle all patent matters for all files in [their] possession."  US00312.  Per Endow's instructions, Brunell did not take any action with respect to the '307 patent maintenance fees. *See* US00337.

Kuyper was not present at the December 23, 2002 meeting between Hi/fn and I&M.  No one ever told Kuyper about the meeting, or Hi/fn's belief that he was monitoring the maintenance fees for the patents in his possession, which included the '307 patent. *See* US00278; US00323-24.  Kuyper stated that he did not learn of the December, 2002 meeting, or Hi/fn's belief that he was handling any maintenance fee work for Hi/fn, until contacted for Hi/fn's reinstatement petition in late 2006/early 2007, some four years later. *See* US00323-24.  Kuyper indicated that even if he had been told of the December, 2002 meeting, he would have "interpreted" Hi/fn's decision to "maintain the status quo" as "confirming my impression . . . that I was to continue to represent Hi/fn's interest relative to licensing and possible litigation issues, rather than to represent Hi/fn by keeping track of the deadlines for payment of maintenance fees" for Hi/fn patents.  US00323.

## B.     Hi/fn's Initial Petition to Revive the '307 Patent

On November 22, 2006, Hi/fn learned from its licensee Hewlett Packard that the maintenance fees for the '307 patent had not been paid and the patent had expired. *See* US00282.

On March 13, 2007 – almost four years after the '307 patent expired – Hi/fn filed a Petition to Accept Delayed Payment of Maintenance Fees Under 37 C.F.R. § 1.378(b) for the '307 patent under the stringent "unavoidable delay" standard (Initial Petition). *See generally* US00036-55.  Under the governing regulation, Hi/fn was required to show to the satisfaction of the Director that the delay in paying the fee was unavoidable

> since reasonable care was taken to ensure that the maintenance fee would be paid
> timely and that the petition was filed promptly after the patentee was notified of, or
> otherwise became aware of, the expiration of the patent.

37 C.F.R. § 1.378(b)(3).  Such a showing must

> enumerate the steps taken to ensure timely payment of the maintenance fee, the date and the manner in which patentee became aware of the expiration of the patent, and the steps taken to file the petition promptly.

*Id.*

Hi/fn alleged that the delay in paying the maintenance fee for the '307 patent was unavoidable "due to a docketing error and personnel change[,] which caused miscommunications among the principals involved." US00038.  Hi/fn maintained that the I&M clerical error led to the mistaken transfer of the '307 patent file to Kuyper at L&W.  *Id.*  Because Kuyper "did not view himself as the attorney responsible for payment of maintenance fees for Hi/fn" but believed that I&M still retained that responsibility, the delay in the fee was "unavoidable."  *Id.*

## C.     USPTO's Initial Decision

On April 26, 2007, the USPTO dismissed Hi/fn's Initial Petition (Initial Decision).  *See generally* US00001-13.  The USPTO found that Hi/fn had failed to show that adequate steps  were taken by or on behalf of Hi/fn to assure timely payment of the '307 maintenance fees after the December 23, 2003 meeting between Hi/fn and I&M.  *See*  US00006.  At that point, Hi/fn instructed I&M not to take any action with respect to the '307 patent.  The record shows that no party – most notably Hi/fn or Kuyper – "had any steps in place to ensure payment of the maintenance fee," which "is not unavoidable delay."  US00006 (citing numerous cases standing for that legal proposition). While Hi/fn maintained that it believed Kuyper was handling the fees, Hi/fn's failure to clarify each party's responsibilities and assure that that someone was handling the maintenance fee "does not represent the due care and diligence of prudent and careful persons with respect to their most important business" as required under 37 C.F.R. § 1.378(b)(3).  US00008.  Hi/fn's failure to communicate with Kuyper was "not the action of a prudent and careful person with respect to his most important business."  US00008.  Hi/fn knew of confusion surrounding its patents and the fact that fees were due.  *See* US00007-8.  The USPTO explained that "delay resulting from a lack of proper communication as to the responsibility for scheduling and payment of a maintenance fee does not constitute unavoidable delay."  US00007 (citing *In re Kim*, 12 USPQ2d 1595 (Comm'r Pat. 1988), and *Ray v. Lehman*, 55 F.3d 606, 610 (Fed. Cir. 1995)).  Accordingly, the USPTO dismissed

1    Hi/fn's Initial Petition.

2         The USPTO rejected Hi/fn's argument that I&M's clerical error rendered the delay

3    unavoidable.  The USPTO noted the factors to be considered for such a showing, including that (1)

4    the error was the cause of the delay, and (2) that the "employee(s) was sufficiently trained and

5    experienced with regard to the functions and routine for its performance that reliance upon such an

6    employee represented the exercise of due care."  US00009 (citations omitted).  The USPTO first

7    noted all the evidence that Hi/fn had failed to provide, including statements from key players (such as

8    Cohen, who Hi/fn blamed for the error in its Initial Petition) and information regarding the docketing

9    system, employee training, etc.  *See* US00007; US00009.  Based on the evidence offered by Hi/fn, the

10   USPTO found that Hi/fn had failed to meet requirements (1) and (2).  *See* US00010.  Kuyper's

11   decision to use Cohen did not satisfy the standard, since she was not a patent paralegal.  *See*

12   US00010.  More importantly, the USPTO explained that any clerical error is "trumped by Hi/fn's

13   subsequent failure to obligate another to track and pay the fee, or itself track and pay the fee."

14   US00011.

15        Lastly, even if Hi/fn could establish that the clerical error rendered the delay unavoidable, "it

16   would still be necessary to demonstrate why the lack of assignee diligence for a period of three years

17   should not be fatal to reinstatement."  US00012 (legal citations omitted).  That is, Hi/fn's lack of

18   diligence in discovering and acting on the expiration of the '307 patent between March 26, 2003

19   (when the patent expired) and December, 2006 (when Hi/fn began investigating the matter) "would

20   overcome and supersede any delay caused by its representatives."  US00012.

21        The USPTO informed Hi/fn that they could submit a petition for reconsideration within two

22   months.  US00001.

23   **D.    Hi/fn's Request for Reconsideration and USPTO Final Decision**

24        On June 29, 2007, Hi/fn filed a Petition for Reconsideration under 37 C.F.R. § 1.378(e)

25   (Reconsideration Petition) of the Initial Decision.  *See generally* US00261-288.  Hi/fn reasserted its

26   contention that the docketing error "unleashed a chain of events" causing non-payment of the

27   maintenance fee.  Hi/fn re-alleged the facts as presented in its Initial Petition, with the addition of

28   identifying Helen Esparza as the docket clerk who failed to update I&M's docket system.  *See*

8

1   US00263; US00283.

2        Hi/fn argued the clerical error "could have been rectified" at the December 23, 2002 meeting

3   between I&M and Hi/fn only when viewed in "hindsight." US00264. Hi/fn maintained that the

4   conduct of Hi/fn post-meeting was "reasonably prudent based on their understanding of the situation

5   at that time." US00264.

6        Hi/fn also disagreed with the USPTO's position that Hi/fn need demonstrate diligence

7   between the expiration of the patent and Hi/fn's first steps to monitor the status of the '307 patent.

8   *See* US00287. Hi/fn maintained that "there is no requirement for diligence in the period following

9   expiration of the patent until patentee was notified of, or otherwise became aware of, the expiration of

10  the patent." US00287.

11       On October 24, 2007, the USPTO issued a decision denying Hi/fn's Reconsideration Petition

12  (Final Decision). *See generally* US00014-29. The USPTO again concluded that Hi/fn's failure to

13  assure that the maintenance fees for its patents were being properly monitored and paid, either by

14  handling the matter itself or through its attorneys, was not unavoidable under 37 C.F.R. §

15  1.1378(b)(3). *See* US00020.

16       The USPTO found that the failure of any of the parties – Hi/fn, Kuyper, or I&M – to have

17  "any steps in place to ensure payment of the maintenance fee" at the time the maintenance fee was

18  due "is fatal to reinstatement." US00021 (citations omitted); *see generally* US00021-22. The

19  USPTO concluded that the situation arose because the parties <u>failed to communicate</u> and "[t]hat all

20  parties, particularly [Hi/fn] and Kuyper did not clarify each other's meaning and intent, and thus, their

21  own obligation(s) in this matter simply does not represent the due care and diligence of prudent and

22  careful persons with respect to their most important business." US00027. The USPTO noted that

23  Hi/fn's "blind faith" in assuming that Kuyper was tracking the fee "is not the action of a prudent and

24  careful person with respect to his or her most important business." US00021 (citing *Burandt v.*

25  *Dudas*, 496 F. Supp. 2d 643, 650 (E.D. Va. 2007)). Hi/fn's blind reliance was particularly

26  unreasonable here given the confusion surrounding the Petition Patents. US00027; *see also* US00022

27  (concluding that Hi/fn "knew, or should have known" that Kuyper was not handling the fees given

28  that Hi/fn could not even get Kuyper to respond to its June 17, 2002 email asking him to compare his

9

files to their list of Hi/fn patents); US00026-27 (noting record evidence of confusion between the parties regarding who had the files and was handling the maintenance fees).  Toward that end, nothing in the record established that Hi/fn had "clearly and unambiguously" informed Kuyper that "he was being relied upon to track the maintenance fee" for the '307 patent.  US00022 n.1.

The USPTO again rejected Hi/fn's theory that the clerical error rendered the maintenance fee delay "unavoidable."  Fundamentally, "the delay is not due to the alleged clerical error(s) of Esparza and/or Cohen, but due to Hi/fn's own action or inaction in this case" to assure that steps were in place to have the fees tracked and paid after the December 23, 2002 meeting.  US00024.  Thus, the USPTO concluded that the docketing error "cannot provide an adequate basis for showing to the satisfaction of the Director that the delay was unavoidable within the meaning of 35 U.S.C. § 41(c) and 37 C.F.R. § 1.378(b)."  US00024; *see also* US00026 ("[A]ny [docketing system] errors due to Kuyper, Esparza, or Cohen are trumped by Hi/fn's subsequent failure – on and after December 23, 2003, to obligate another to track and pay the fee, or track and pay the fee.").  Moreover, the USPTO concluded that the record failed to show that Esparza was adequately trained and supervised.  US00025-26.  The USPTO found troubling Hi/fn's contention that the docket system and related employees were reliable given that normal procedures were not followed for 11 of 12 Hi/fn patents.[5]  US00022.

Finally, the USPTO reiterated that Hi/fn's failure to exercise diligence across the entire period of delay in payment of the maintenance fee was "fatal to reinstatement" of the '307 patent.  US00028.  The USPTO rejected Hi/fn's position that there was no requirement of diligence between patent expiration and discovering/remedying the expiration.  US00028-29 (citing *Burandt v. Dudas*, 496 F. Supp. 2d 643, 646 (E.D. Va. 2007), and *Douglas v. Manbeck*, 21 USPQ2d 1697, 1700 (E.D. Pa. 1991) ("The plaintiff may well have not known that his application was abandoned, but the test is whether he exercised due diligence to find out and correct the problem.")).  The USPTO concluded that Hi/fn had failed to take any action during the 3 ½ year period between expiration on March 26,

---

[5]   There were originally a total of 12 patents assigned from Stac to Hi/fn.  *See* US00013; US00316 (¶ 6).  Of these, only the assignment for U.S. Patent No. 4,701,745 – which Hi/fn refers to as the "Waterworth Patent" – was recorded by I&M in its docket system.  *See* US00269.

2003, and December, 2006, "to either check the status of the patent or [i]nquire of either of its 2 law firms or even the USPTO, as to whether the fee had been paid and this patent maintained in force." US00029.

## III.   ARGUMENT AND AUTHORITIES

### A.   Legal Standards

#### 1.   The Standard on Summary Judgment Motions

Summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material facts exists, a court must view all facts, and draw all reasonable inferences, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Where, as here, summary judgment is based on an administrative record, there can be no genuine issue of material fact concerning the contents of the record. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973); *R.R. Donnelley & Sons v. Dickinson*, 123 F. Supp. 2d 456, 458 (N.D. Ill. 2000).

#### 2.   The Standard of Review for a USPTO Decision on a Petition to Reinstate an Expired Patent

The APA, 5 U.S.C. § 701 et seq., governs this Court's review of the PTO's decision to deny Hi/fn's petition to reinstate an expired patent for failure to pay maintenance fees. *Ray v. Lehman*, 55 F.3d 606, 608 (Fed. Cir. 1995). Under the APA, an agency action may be set aside only if it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2006); *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999). The scope of review under this standard is "narrow" and "a court is not to substitute its judgment for that of the agency." *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Ray*, 55 F.3d at 608; *Commissariat A L'Energie Atomique v. Watson*, 274 F.2d 594, 596-597 (D.C. Cir. 1960) (PTO has a "large measure of discretion" in determining whether a delay is "unavoidable").

11

### 3.     The Unavoidable Delay Standard is Strict

The "unavoidable delay" standard is a heightened standard that is not satisfied by a patentee who claims that a delay was merely unintentional.  As previously discussed, the USPTO has the discretion to accept late maintenance fee payments up to 24 months after the end of the six-month grace period if a patentee shows that his late payment was merely <u>unintentional</u>.  *See* 35 U.S.C. § 41(c)(1); 37 C.F.R. § 1.20.  A patentee seeking to show unintentional delay usually need only provide a statement to the USPTO that the delay was unintentional, and pay the appropriate additional fees.  *See* 37 C.F.R. § 1.378(c); M.P.E.P. § 711.03(c).  After this period ends, however, the USPTO may accept late maintenance fees only "if the delay is shown to the satisfaction of the Director to have been <u>unavoidable</u>."  35 U.S.C. § 41(c)(1) (emphasis added); *see also* H.R. Rep. No. 97-542, at 8 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 765, 772 (providing that "[a]fter the expiration of a reasonable period of time, the patentee would bear <u>a heavy burden of proof</u> that the delay was unavoidable" (emphasis added)).  Serious policy considerations necessitate an exacting standard:

> [t]he unavoidable delay standard is necessarily stringent [because] [i]ndividuals and entities who are making business decisions have the right to rely on the fact that if a patent lain dormant to premature expiration [for some period of time], it will be the rare case – one presenting extraordinary facts demonstrating that there truly was nothing else that the patent owner could have done – that will cause the USPTO to reinstate such a patent and expose others to liability.

*Burandt v. Dudas*, 496 F. Supp. 2d 643, 652 (E.D. Va. 2007); *see also Femspec v. Dudas*, 2007 U.S. Dist. LEXIS 8482, at *28-30 (N.D. Cal. 2007) (rejecting argument that legislative history "reflects an intent to relax the 'unavoidable delay' standard . . . even with its sometimes harsh results").

A patentee seeking to reinstate an expired patent under this heightened standard bears the burden of proving that his delay was unavoidable.  *See Donnelley*, 123 F. Supp. 2d at 459.  In doing so, the patentee must, *inter alia*, provide evidence showing that "reasonable care was taken to ensure that the maintenance fee would be paid timely and that the petition was filed promptly after the patentee was notified of, or otherwise became aware of, the expiration of the patent"; and "enumerate the steps taken to ensure timely payment of the maintenance fee, the date and the manner in which patentee became aware of the expiration of the patent, and the steps taken to file the petition promptly."  37 C.F.R. § 1.378(b); *see also Ray*, 55 F.3d at 608.

On review, a court must consider "whether the party responsible for payment of the maintenance fee exercised the due care of a reasonably prudent person." *Ray*, 55 F.3d at 609; *Femspec*, 2007 U.S. Dist. LEXIS 8482, at *16. Courts have interpreted this to be the diligence "'generally used and observed by prudent and careful men in relation to their most important business.'" *Donnelley*, 123 F. Supp. 2d at 459 (quoting *In re Mattullath*, 38 App. D.C. 497 (1912)). "Whether or not a delay is unavoidable is decided on a case-by-case basis, taking all of the facts and circumstances into account." *Id.* (citing *Smith v. Mossinghoff*, 671 F.2d 533, 538 (D.C. Cir. 1982)).

### B.   The USPTO Properly Denied Hi/fn's Petition To Reinstate The '307 Patent

The record demonstrates that Hi/fn failed to act with the due care and diligence of a reasonable person handling his most important business affairs because it had failed to ensure the timely payment of the '307 maintenance fees when that patent expired in March, 2003. Apprized that there was confusion regarding responsibility for the maintenance fees and having discharged I&M of any responsibility for that task in December, 2002, Hi/fn neglected to speak with Kuyper, the party that Hi/fn assumed was handling the fees. Hi/fn's decision to continue blindly relying upon its assumptions rather than communicate with Kuyper and confirm its assumption that Kuyper was handling the fees on Hi/fn's patents does not support a finding of "unavoidable" delay.

#### 1.   Hi/fn had no system in place to ensure timely payment of the '307 patent maintenance fees at the time the patent expired

The USPTO correctly denied Hi/fn's petition to accept the delayed maintenance fee because Hi/fn did not demonstrate that it had taken adequate steps to ensure timely payment of the '307 maintenance fee at the time of expiration on March 26, 2003. It was incumbent upon Hi/fn, as owner of the '307 patent, to either monitor and pay the maintenance fee itself, or retain another to handle that responsibility. *See, e.g.*, *California Med. Prods. v. Technol Med. Prod.*, 921 F. Supp. 1219, 1259 (D. Del. 1995).

The record shows that Hi/fn did not have any steps in place to make sure that those fees were being tracked and paid after the December 23, 2002 meeting between it and I&M. Hi/fn explicitly instructed I&M <u>not</u> to handle the fees for the '307 patent at the meeting. Having expressly released I&M from any obligation to handle the maintenance fee for the '307 patent, Hi/fn was obligated to

assume the responsibility itself, or assure that another was handling the fees for it.  The record

demonstrates that Hi/fn failed to exercise either option.

Hi/fn did not have the ability to handle the maintenance fees itself.  Instead, the record shows

that Hi/fn blindly assumed that Kuyper was handling the fees for the '307 patent.  There is no

evidence that Hi/fn ever told Kuyper that it wanted him to handle maintenance fees once he joined

L&W, either by expressly retaining him for that purpose or even telling him that it considered him

responsible for that task.  *See* US00022.  Kuyper confirmed that he did not know that Hi/fn

considered him responsible for maintenance fees relating to any patent files in his possession, which

included the '307 patent.  *See* US00323-24.  Kuyper learned of Hi/fn's impression, and the December

23, 2002 meeting between Hi/fn and I&M, <u>four years later</u> when he was contacted about Hi/fn's

attempt to reinstate the patent.  *See* US000323-24.  In fact, Kuyper's firm (L&W) did not handle work

related to patent prosecution, nor did they have a system to handle the tracking of maintenance fees.

*See* US00184-85; US00319.  Further, Kuyper explained that even if he had been told of Hi/fn's

decision at the December, 2002 meeting to maintain the "status quo," he would have interpreted it to

mean that he should simply continue representing Hi/fn on licensing and litigation, but not regarding

maintenance fees.  *See* US00323.  Hi/fn's failure to communicate with Kuyper regarding its apparent

expectation that he handle the maintenance fees does not constitute unavoidable delay.  *See* US00023;

US00026; *In re Kim*, 12 USPQ2d 1595, 1603 (Comm'r Pat. 1988) (failure to communicate not

consistent with "degree of care to be exercised by a reasonably prudent person"); *Donnelley*, 123 F.

Supp. 2d at 460-61.

Further, the record supports the conclusion that there was a need for Hi/fn to communicate

with Kuyper and confirm its assumption that Kuyper was handling the '307 maintenance fees.  *See*

US00022; US00026-27.  Hi/fn was aware as late as December 23, 2002, that there was confusion

regarding its patents and maintenance fee responsibility when it met with I&M.  *See* US00027;

US00335; US00170-71.  While Hi/fn saw fit to make explicit I&M's role by affirmatively telling

I&M not to handle the fees for the patents-in-suit, Hi/fn inexplicably deemed it unnecessary to make

Kuyper's role explicit.

1    Kuyper's conduct should have led a reasonably prudent person to question his understanding

2  of the "status quo."  *See* US00022; US00026-27.  Hi/fn cited two reasons to the USPTO why it was

3  justified in assuming Kuyper was handling the '307 maintenance fees: "because (1) he had previously

4  requested Hi/fn to pay maintenance fees on files in his possession . . . and (2) because Jane Sinclair

5  sent him the listing of patents on June 17, 2002 . . . ."  US00313.

6    To the contrary, Kuyper's lone act of fee payment while at L&W is consistent with Kuyper's

7  statement that he did not consider himself responsible for fee payment.  The email that Kuyper sent

8  Hi/fn on May 15, 2002 inquiring about the fee for the '142 and '690 patents clearly indicated that he

9  believed another – specifically, I&M – to be handling the maintenance fees for Hi/fn's patents: "You

10  may have already received notice of this from Irell & Manella or from Computer Patent Annuities

11  (the service that Irell used to make the maintenance fee payments in the past)."  US00073; *see*

12  US00321.  Indeed, Kuyper indicated that he offered to pay the fees only as a "courtesy" because it did

13  not look like anyone else had done it.  US00321; *see* US00073 ("I [Kuyper] write because the patent

14  office does not show that these 12th year maintenance fees have been paid.").

15    Further, Kuyper never responded to Sinclair's June 17, 2002 email.  *See* US00307-08.

16  Kuyper's unresponsiveness does not justify Hi/fn's assumption that Kuyper was handling their patent

17  maintenance fees.  *See* US00222.  And despite Kuyper's silence, Hi/fn chose not to follow-up with

18  Kuyper and instead "assumed the listing was correct."  US00308.

19    Given these red-flags, Hi/fn, as a reasonable person handling their most important business,

20  would have confirmed with Kuyper its assumptions regarding Kuyper's responsibility for

21  maintenance fee payment.  The simple step of a phone call or email would have revealed to Hi/fn that

22  their assumptions were wrong.  Such a conversation would have further revealed that Kuyper "could

23  not" handle that task because his law firm did not have any system for tracking and paying

24  maintenance fees, a crucial necessity for the proper handling of such fees.  US00320;  *see* US00319-

25  21.  The need for Hi/fn to simply confirm its assumption that Kuyper was acting as Hi/fn believed

26  was all the more pressing given the apparent value of the expired patents to Hi/fn.  *See generally*

27  US00279-80.  In short, Hi/fn's failure to demonstrate that it had taken any steps to ensure timely

28  payment – other than its incorrect, unconfirmed assumption that Kuyper was handling the

maintenance fees – "can hardly be squared with the manner by which 'prudent and careful men' conduct their most important business." *Burandt*, 496 F. Supp. 2d at 651-52;  US00020-21; *see also Donnelley*, 123 F. Supp. 2d at 460-61; *Korshinksy v. Godici*, 2005 U.S. Dist. LEXIS 20850, *13 (S.D.N.Y. 2005), *aff'd sub nom, Korshinsky v. Dudas*, 2007 U.S. App. LEXIS 7986 (Fed. Cir. 2007).

> ### 2.   Hi/fn failed to act diligently in discovering and attempting to correct the expiration of the '307 patent

In addition to Hi/fn's failure to assure that adequate steps were in place to handle the maintenance fees on the '307 patent prior to the patent's expiration, Hi/fn failed to exercise diligence in discovering and remedying the expiration.  A proper showing under 37 C.F.R. § 1.378(b) requires that the <u>entire</u> period of delay in paying the fee was unavoidable.  That includes a showing of diligence by Hi/fn following the expiration of the '307 period to discover and remedy its expiration. *See Douglas v. Manbeck*, 21 USPQ2d 1697, 1700 (E.D. Pa. 1991) ("[T]he test is whether he exercised due diligence to find out and correct the problem.").  As explained in *Burandt v. Dudas*, 496 F. Supp. 2d 643, 646 (E.D. Va. 2007):

> evaluation of a petition to reinstate a patent under the 'unavoidable delay' standard looks to three time frames: (1) the delay that originally resulted in the expiration, (2) the delay in filing the first petition to reinstate, and (3) the delay in filing a grantable petition to reinstate . . . .  The USPTO's evaluation, therefore, focused on the activities of the responsible party in each of the relevant time periods.

The '307 patent expired on March 26, 2003; Hi/fn did not discover that fact until December, 2006.  Hi/fn made no showing that it had undertaken any efforts during that three-and-a-half year period to inquire about the status of the '307 patent or whether the fees had been paid, either by contacting the USPTO or its two law firms.  *See* US00029.  Tellingly, Hi/fn learned that its patents had expired only because its licensee (Hewlett Packard) told Hi/fn.  *See* US00282; *Burandt*, 496 F. Supp. 2d at 652 (explaining that "[i]ndividuals and entities making business decisions have the right to rely on the fact that" a patent has expired absent "extraordinary facts" demonstrating unavoidable delay).  Accordingly, Hi/fn's failure to show adequate diligence across the entire period of delay is "fatal to reinstatement."  US00028; *see Burandt*, 496 F. Supp. 2d at 652 ("Plaintiff's failure to take any action to ensure or even inquire about, before expiration, and also waiting an extensive period of

1   time after expiration to take similar action, does not even come close" to satisfying the "exacting"

2   unavoidable delay standard); *Douglas*, 21 USPQ2d at 1700.

3   **IV.     CONCLUSION**

4          The USPTO's denial of Hi/fn's reinstatement petition for the '307 patent is wholly supported

5   by the record.  Accordingly, this court should grant the Director's Motion for Summary Judgment.

6                                                                 Respectfully submitted,

7                                                                 JOSEPH P. RUSSONIELLO
                                                                   United States Attorney
8

9                                                                 _____
                                                                   ABRAHAM A. SIMMONS
10                                                                Assistant United States Attorney
                                                                   Attorneys for Defendant
11  OF COUNSEL:
     ROBERT J. MCMANUS
12  WILLIAM LAMARCA
     Associate Solicitors
13  USPTO Office of the Solicitor
     P.O. Box 15667
14  Alexandria, VA 22215
     (571) 272-9035

15

16

17

18

19

20

21

22

23

24

25

26

27

28