FLIESLER MEYER LLP
Martin C. Fliesler (SBN 073768)
Rex Hwang (SBN 221079)
Julie Daniels Missud (SBN 219508)
650 California Street, 14th Floor
San Francisco, California  94108
Telephone:     (415) 362-3800
Facsimile:     (415) 362-2928
mcf@fdml.com
rhwang@fdml.com
jmissud@fdml.com

**Attorneys for Plaintiff,
Hi/fn, Inc.**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Hi/fn, Inc.,<br>a Delaware Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>JONATHAN W. DUDAS, Director of the United States Patent & Trademark Office,<br><br>    Defendant. | **CASE NO.  C 07-6430 MMC**<br><br>**PLAINTIFF HIFN, INC.'S REPLY TO DEFENDANT'S OPPOSITION TO HIFN'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:         May 30, 2008<br>Time:         9:00 a.m.<br>Location:   Courtroom 7, 19th Floor<br><br>**Honorable Maxine M. Chesney** |

**TABLE OF CONTENTS**

I. Introduction ..........................................................................................................................4

II. Argument .............................................................................................................................4

    A. The Unavoidable Delay Standard Is One of Reasonableness .....................................4

    B. Hifn's Actions Were Reasonable and Prudent.............................................................5

        1. The USPTO Entirely Failed to Consider Important Aspects of the of the Problem In Determining the Reasonableness of Hifn's Actions .........5

        2. The USPTO's Offered Explanation Runs Counter to the Evidence and Is so Implausible That It Cannot Be Ascribed to a Difference in View of the Product of Agency Expertise ................................................6

        3. Hifn's Reliance Upon the *Tecnol* Case is Justified.......................................9

    C. The USPTO Applied the Wrong Standard in Finding That the Docketing Error at Irell Was Not the Root Cause of the Unavoidable Delay ............................9

    D. Kuyper's Actions Were Reasonable Given His Understanding of the Situation at the Time ................................................................................................10

    E. Esparza's Declaration Was Not Provided Because She Was Not Available ..........11

III. Conclusion ........................................................................................................................12

## TABLE OF AUTHORITIES

CASES

*California Medical Prod., Inc. v. Tecnol Medical Prod., Inc.,*
    921 F. Supp. 1219 (D. Del. 1995)..................................................................6, 9

*Douglas v. Manbeck*,
    1991 U.S. Dist. LEXIS 16404 (E.D. Pa. 1991) ..............................................4

*In re Estate of Mendleson,*
    46 Misc. 2d 960 (N.Y. Sur. Ct. 1965)...............................................................7

*In re Kim,*
    12 USPQ2d 1595 (Comm'r Pat. 1988) ............................................................7

*In re Mattullath,*
    38 App. D.C. 497 (D.C. Cir. 1912).............................................................4, 11

*Ray v. Lehman,*
    55 F.3d 606 (Fed. Cir. 1995).................................................................4, 10, 11

STATUTES

35 U.S.C. § 41(c)(1)..............................................................................................4

35 U.S.C. § 41(c)(2)..............................................................................................4

I.   INTRODUCTION

Congress enacted 35 U.S.C. § 41(c)(1) intending to allow patent owners to petition the USPTO to revive expired patents and accept maintenance fee payments more than 24 months late for unavoidably delayed payments. Congress also enacted 35 U.S.C. § 41(c)(2) that allows individuals and entities who are making business decisions to be afforded intervening rights during the time period that a patent has been unavoidably expired. Thus, Congress has created a system that protects both patent owners as well as members of the public who have relied on the fact that a particular patent has expired. Given the fact that Hifn's patents became unavoidably expired, it should be allowed to reinstate its patents under 35 U.S.C. § 41(c)(1).

The Government, however, continues to reject Hifn's efforts to reinstate its patents. In justifying the USPTO's denial of Hifn's petitions to revive, the Government once again adopts a higher standard than Congress or caselaw provides for. Specifically, instead of holding Hifn to a "reasonably prudent person" standard, the Government incorrectly holds Hifn to a "heightened," "exacting," and/or "strict" standard. Moreover, the Government incorrectly interprets the facts of this case and also uses impermissible hindsight when reviewing those facts in an effort to justify the USPTO's Final Decision. Accordingly, the USPTO's Final Decision was arbitrary and capricious and Hifn should be allowed to reinstate its patents.

II.   ARGUMENT

A.   **The Unavoidable Delay Standard Is One of Reasonableness**

"In determining whether a delay in paying a maintenance fee was unavoidable, one looks to whether the party responsible for payment of the maintenance fee exercised the due care of a reasonably prudent person." *Ray v. Lehman*, 55 F.3d 606, 609 (Fed. Cir. 1995); *see also Douglas v. Manbeck*, 1991 U.S. Dist. LEXIS 16404, 21 USPQ2D 1697, 1700 (E.D. Pa. 1991); *In re Mattullath*, 38 App. D.C. 497, 514-15 (D.C. Cir. 1912). Thus, the unavoidable delay standard is clearly based on a "reasonably prudent person" standard. The Government, however,

repeatedly indicates that the unavoidable delay standard is based on a "heightened," "exacting," and/or "strict" standard. *See* Defendant's Opposition to Hi/Fn's Motion for Summary Judgment ("Opposition"), p. 11, lns. 13-14, 26; p. 12, ln. 6; p. 16, ln. 15. The Government's mischaracterization of the unavoidable delay standard should not be allowed and Hifn should not be held to a higher standard than caselaw provides for.

**B.    Hifn's Actions Were Reasonable and Prudent**

    **1.    The USPTO Entirely Failed to Consider Important Aspects of the Problem In Determining the Reasonableness of Hifn's Actions.**

As set forth in Hifn's Motion for Summary Judgment ("Hifn's Motion"), the USPTO failed to consider numerous essential facts from Hifn's perspective in finding that Hifn was not reasonably relying on its counsel to pay the maintenance fees for the '307 patent. Among other things, the USPTO ignored: the significance of Hifn's dependence upon outside patent counsel to manage its patent portfolio because it does not have in-house counsel or in-house patent counsel; the significance of Hifn's prior history with Kuyper at Irell; the fact that Kuyper retained Hifn as a client when he went to Latham; the fact that Kuyper had actual possession of the '307 file at Latham when the maintenance fee was due; the fact that Kuyper was actually paying maintenance fees for Hifn's patents while at Latham; and the impact that Kuyper's actions had on Hifn as to its understanding of the situation at the time. Overall, the USPTO's Final Decision failed to consider the conditions as they existed at the time from Hifn's point of view when evaluating the reasonableness of Hifn's actions. In its Opposition, the Government does not even make an effort to contend that these important aspects of the problem were considered by the USPTO in its Final Decision. Accordingly, the USPTO's Final Decision was arbitrary and capricious and Hifn's Motion should be granted.

///

///

### 2. The USPTO's Offered Explanation Runs Counter to the Evidence and Is So Implausible That It Cannot Be Ascribed to a Difference in View or the Product of Agency Expertise.

The Government now argues that the USPTO's Final Decision was justified because: (1) "[t]he Final Decision clearly indicates that . . . [Hifn did not have] any steps in place to ensure timely payment of the fee at the time of expiration"; (2) there was a "failure to communicate" between Kuyper and Hifn while at Latham as to the maintenance fees for the '307 patent; (3) Hifn was aware of the confusion surrounding the maintenance fees for the '307 patent; and (4) Kuyper asked Hifn if he should pay maintenance fees for two of Hifn's patents while at Latham, which amounted to a complete reversal from his prior conduct that should have demonstrated to Hifn that Kuyper did not view himself as being the person responsible for paying the '307 patent's maintenance fees. The Government's arguments are unfounded, are based on impermissible hindsight and also hold Hifn to a higher standard than that of a reasonably prudent person.

As to the Government's argument (1), Hifn *did* have steps in place to ensure timely payment of the '307 maintenance fees. As a company that does not have in-house counsel, much less in-house patent counsel, Hifn relied upon the two large law firms of Irell and Latham to monitor and maintain its patents. If the Government is suggesting that it was incumbent on Hifn to also have its own docketing system and docketing personnel to track the maintenance fees for its patents, then it is holding Hifn (and perhaps every company in the country, large or small, public or private) to a much higher standard than that of a reasonably prudent person. After all, it is undisputed that a patent owner may show that it took reasonable steps to ensure timely payment of maintenance fees by showing that it engaged outside counsel to monitor the maintenance fees due for its patents. *California Medial Prod., Inc. v. Tecnol Medical Prod., Inc.*, 921 F. Supp. 1219, 1259 (D. Del. 1995); [US00017]. Thus, the USPTO cannot simply

1 conclude that Hifn did not have any steps in place to ensure timely payment of the maintenance

2 fee since Hifn was reasonably relying on its outside counsel to pay its maintenance fees.

3     As to the Government's argument (2), with the benefit of hindsight, the USPTO has

4 identified an action that Hifn could have taken that would have likely eliminated the need for

5 Hifn's petition in the first place.  Hifn agrees that had there been a further communication

6 between Kuyper and Hifn after December 23, 2002 regarding the third maintenance fee for the

7 '307 patent, the maintenance fee would have likely been paid.  Nevertheless, as one court puts it,

8 "[e]ven the hopeless idiot has the matchless intelligence of the seer when he views the effect of

9 an impending catastrophe after the same has happened." *In re Estate of Mendleson*, 46 Misc. 2d

10 960, 966 (N.Y. Sur. Ct. 1965).  Hifn's actions were not perfect in hindsight, but they were

11 reasonable given the facts and circumstances known to it at the time.  For example, it was the

12 established practice at Irell between Hifn and Kuyper to have Kuyper automatically pay the

13 maintenance fees on Hifn's behalf without further instructions from Hifn.  Thus, in this situation,

14 Hifn's "lack of communication" was actually consistent with the established practice between

15 Hifn and Kuyper.

16     The Government cites to *In re Kim*, 12 USPQ2d 1595 (Comm'r Pat. 1988), in support of

17 its argument that a failure to communicate is not consistent with the degree of care to be

18 exercised by a reasonably prudent person.  However, *In re Kim* is factually distinguishable from

19 this case.  For example, that case did not involve an established practice between the patentee

20 and the attorney where the attorney was not expected to communicate with the patentee as to

21 payment of maintenance fees, as is the situation here.  Thus, what was factually a "failure to

22 communicate" in *In re Kim* was actually the established practice in this case from Hifn's point of

23 view.

24     As to the Government's argument (3), the Government maintains that as of December 23,

25 2002, "Hi/fn was aware of the confusion surrounding the location of the patents and

1   responsibility for the maintenance fees, and Kuyper's conduct with respect to Hi/fn's patents."

2   *See* Opposition, p. 14, lns. 4-5.  The Government misconstrues the facts.

3         From Hifn's perspective, as of December 23, 2002, it was aware of the fact that there was

4   some initial confusion as to the location of its patent files.  Nevertheless, maintenance fee

5   payments were made for two of Hifn's patents on May 22, 2002 by Kuyper while he was at

6   Latham.  Thus, Hifn knew where the patent files were on December 23, 2002.  The patent files

7   were with Kuyper at Latham.  Moreover, based on the fact that Kuyper had possession of the

8   file, the fact that Kuyper was actually paying Hifn's maintenance fees for the patents in his

9   possession (despite the fact that they were transferred to him in error), as well as its prior history

10  dealing with Kuyper, Hifn reasonably assumed that Kuyper was responsible for handling all

11  issues related to the '307 patent, including monitoring its maintenance fees.  In fact, Brunell

12  states in his declaration that "it was clear to me that Ms. Endow believed that Hifn had an

13  understanding with Mr. Kuyper regarding his retention of the Hifn patent files Irell had

14  transferred to him and that Mr. Kuyper was responsible for monitoring the due dates for payment

15  of maintenance fees related to those patent files." [US0037, ¶ 20].  Accordingly, it would be

16  inaccurate to state that Hifn was aware of any confusion as to whether Kuyper was responsible

17  for paying the third maintenance fee for the '307 patent.  While Hifn's reliance in Kuyper turned

18  out to be mistaken, Hifn's belief was still reasonable given all of the facts and circumstances

19  known to it at the time.

20        Finally, the Government raises a new argument (4) that was not addressed by the

21  USTPO.  In its Opposition, the Government argues that Hifn's belief that Kuyper was paying the

22  maintenance fees for its patents – just as he had always done – was "entirely inconsistent with

23  Kuyper's conduct the lone time that Kuyper paid fees on Hi/fn patents while at L&W.  Instead of

24  acting without Hi/fn's approval, Kuyper <u>asked</u> Hi/fn whether they wanted him to pay the fees, a

25  complete reversal from his prior conduct."  *See* Opposition, p. 15, lns. 8-11.  Nevertheless, from

HIFN'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT  
**CASE NO. 07-66430 MMC**         -8-

Hifn's perspective at the time, there would have been nothing inherently alarming about Kuyper's communication seeking approval to pay maintenance fees for Hifn's patents when he first went to Latham. Given the fact that Kuyper recently changed law firms, it would have been perfectly reasonable for Hifn to view Kuyper's communication as an act of reassurance as opposed to a warning that he would no longer pay maintenance fees on Hifn's behalf. The Government clearly uses impermissible hindsight to make this point.

### 3. Hifn's Reliance Upon the *Tecnol* Case Is Justified

The Government argues that Hifn's reliance upon *Tecnol* is misplaced because Hifn is not like the patentee in *Tecnol*. In support of its position, the Government argues that the "patentee and attorney in *Tecnol* both clearly understood that the attorney was responsible for ensuring timely payment of the expired patent's maintenance fees, and that the attorney had a primary and backup docketing system in place." *See* Opposition, p. 14, lns. 19-21. No other distinction is made between the patentee in *Tecnol* and Hifn.[1] But contrary to the Government's argument, there was no clear "meeting of the minds" between the patentee and the attorney in *Tecnol* regarding maintenance fees. In fact, the patentee and the attorney in *Tecnol* had no specific arrangement regarding maintenance fees at all. *Tecnol*, 921 F. Supp. at 1259. Instead, the patentee simply assumed that his attorney would remind him of maintenance fee due dates, and the attorney separately agreed that his clients typically relied on counsel to send them maintenance fee reminders. *Id*. at 1258-59. Accordingly, the Government's attempt to distinguish *Tecnol* from this case is unavailing.

### C. The USPTO Applied the Wrong Standard in Finding that the Docketing Error At Irell Was Not the Root Cause of the Unavoidable Delay.

In the Opposition, the Government argues that "the USPTO correctly determined, I&M's clerical error *had no bearing* on Hi/fn's failure to communicate and confirm its assumption that

---

[1] The Government also mentions that the attorney had a primary and backup docketing system in place in *Tecnol*, but that fact is irrelevant as to whether Hifn was like the patentee in *Tecnol*.

Kuyper was handling the fees on its patents." *See* Opposition, p. 17, lns. 26-28 (emphasis added). According to the Government, "[t]he 'unavoidable' delay standard focuses on what steps were in place at the time of expiration; here, that date is March, 2003." *See* Opposition, p. 18, lns. 4-5. The Government's endorsement of the USPTO's myopic view of the unavoidable delay standard is misplaced.

The unavoidable delay standard should not focus on the specific steps that were in place at the time of expiration, but rather on the broader notion of whether due care of a reasonably prudent person was exercised by the party responsible for payment. *Ray,* 55 F.3d at 609. Thus, the determination as to the reasonableness of a person's conduct must be made by taking *all the facts and circumstances into account*. *Id.* (emphasis added).

In its Final Decision, the USPTO continually interprets the facts out of context by assuming that the clerical error had no bearing on the actions taken by Hifn and Kuyper at Latham. However, the reasonableness of both Hifn and Kuyper's actions cannot truly be appreciated unless the impact of the clerical error is taken into account. Accordingly, by limiting its analysis to the state of affairs as they existed in March 2003 and ignoring the reasons why and how the state of affairs came to pass, the USPTO ignores important aspects of the case and contravenes the proper unavoidable delay standard.

**D.    Kuyper's Actions Were Reasonable Given His Understanding of the Situation At the Time.**

To begin with, it is noted that consistent with the USPTO's review of Hifn's actions, the Government continues to hold Kuyper to a higher standard than that allowed by caselaw. Here, the Government states that Hifn's position as to the reasonableness of Kuyper's actions is incompatible with the "strict" standard of unavoidable delay. *See* Opposition, p. 16, ln. 15. However, the unavoidable delay standard is based on a "reasonably prudent person" standard and not a "strict" standard. *Ray*, 55 F.3d at 609; *In re Mattullath*, 38 App. D.C. at 514-15.

1   The Government also argues that Hifn cannot rely upon Kuyper while at Latham since Kuyper did not have any steps in place to ensure the timely payment of the '307 maintenance fee. The standard, however, is still one of reasonableness. Accordingly, it must be determined whether Kuyper's actions were reasonable after taking into consideration all of the relevant facts and circumstances. As set forth previously in Hifn's Motion, Kuyper's actions were reasonable under the circumstances.

The Government further argues that Kuyper's actions were not reasonable since there were several "clues" that should have alerted Kuyper to the fact that he was being relied upon by Hifn to pay the '307 patent's maintenance fees. Those clues include the fact that a cover letter to Kuyper indicated that the '307 patent was being removed from Irell's docket, the fact that Hifn instructed Kuyper to pay maintenance fees on its behalf while he was at Latham, and the fact that Irell seemed to be confused as to who should have possession of Hifn's patent files. Nevertheless, the "clues" become much less "apparent" without the benefit of hindsight and when viewing the situation from Kuyper's point of view.

At the time the third maintenance fee for the '307 patent was due, Kuyper was working at Latham, a firm that does not typically handle work related to patent prosecution. Latham does not have the docketing system that tracks maintenance fee due dates for patents, much less any other patent prosecution deadlines. Accordingly, Kuyper reasonably viewed the scope of his employment as being limited to primarily licensing matters related to Hifn's patents. Kuyper's understanding of the scope of his representation, and his relationship with Hifn as a client, was entirely consistent with these facts known to Kuyper at the time.

**E.     Esparza's Declaration Was Not Provided Because She Was Not Available**

In the Opposition, the Government reiterates the USPTO's arguments as to why Irell's clerical error does not render the delay unavoidable. *See* Opposition, p. 17-19. This issue was fully addressed in Hifn's Motion and does not need to be repeated here.

1    The Opposition, however, does address one point that was not discussed in Hifn's Motion. As the Government points out, the declaration of Esparza was not submitted to the USPTO in support of Hifn's Petitions. It is to be noted that Esparza left Irell in November 1997. Accordingly, she was not available to submit her declaration. [US00263]. Nevertheless, the declarations submitted by Brunell and Henderson establish Esparza's competence and justify reliance by Irell on her to properly complete the functions she was performing at the time of the commission of the error.

## III.   CONCLUSION

The facts and circumstances of this case present a compelling case that the USPTO's Final Decision to deny reinstatement of the '307 patent was arbitrary and capricious. As there are no genuine issues of material fact, the Court may properly grant Plaintiff's Motion Summary Judgment and order the USPTO to reinstate Hifn's patents at issue.

Respectfully submitted,

Dated:   May 16, 2008              /s/ Martin C. Fliesler
                                   FLIESLER MEYER LLP
                                   Martin Fliesler (SBN 073768)
                                   Rex Hwang (SBN 221079)
                                   Julie Daniels Missud (SBN 219508)
                                   650 California Street, 14th Floor
                                   San Francisco, California 94108

                                   Attorneys for Plaintiff
                                   Hi/fn, Inc.