United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  HI/FN, INC.,                          No. C-07-6430 MMC

12              Plaintiff,                 **ORDER DENYING PLAINTIFF'S MOTION
                                           FOR SUMMARY JUDGMENT;
13      v.                                 GRANTING DEFENDANT'S CROSS-
                                           MOTION FOR SUMMARY JUDGMENT**
14  JONATHAN W. DUDAS,
    Director, United States Patent & Trademark
15  Office,

16              Defendant

    _____/

17

18      Before the Court is plaintiff Hi/fn, Inc.'s ("Hi/fn") motion for summary judgment, filed

19  April 25, 2008, and defendant Jonathan Dudas's cross-motion for summary judgment, filed

20  May 15, 2008.  Both motions have been fully briefed in conformity with the Court's order of

21  March 5, 2008.  Having read and considered the papers filed in support of and in opposition

22  to the motions, the Court rules as follows.

23                              **BACKGROUND**

24      In the instant action, Hi/fn seeks judicial review of decisions rendered by the United

25  States Patent and Trademark Office ("PTO"), by which decisions the PTO dismissed Hi/fn's

26  initial petition to accept delayed payment of a maintenance fee for nine patents, including

27  U.S. Patent No. 5,003,307 ("the '307 Patent"), and Hi/fn's petition for reconsideration of the

28

1   denial of its initial petition.[1]

2       The '307 Patent issued on March 26, 1991 and was initially assigned to Stac

3   Electronics, Inc. ("Stac"), which, in November 1996, transferred ownership of the '307

4   Patent to Hi/fn.  (See Administrative Record ("AR") US00089.)[2]  A maintenance fee for the

5   '307 Patent was due on September 26, 2002, and was not paid by the due date or within

6   the six-month grace period provided by law.  (See AR US00001, 36-37.)[3]  As a result, the

7   '307 Patent "expired" on March 26, 2003.  (See AR US00001.)

8       On March 23, 2007, Hi/fn filed with the PTO a "Petition to Accept Delayed Payment

9   of Maintenance Fees Under 37 C.F.R. §1.378(b)," by which petition Hi/fn sought leave to

10  pay the maintenance fee late.  (See AR US00036-55.)  In a decision filed April 26, 2007,

11  the PTO dismissed the petition, finding Hi/fn had failed to make the requisite showing of

12  "unavoidable" delay pursuant to 35 U.S.C. § 41(c).  (See AR US00001-13.)  On June 22,

13  2007, Hi/fn filed with the PTO a "Petition for Reconsideration Under 37 C.F.R. § 1.378(e) of

14  Dismissal of Petition to Accept Delayed Payment of Maintenance Fee" (see AR US00261-

15  88), which the PTO dismissed by a decision filed October 24, 2007, again finding Hi/fn

16  failed to make a sufficient showing (see AR US00014-29).  Hi/fn thereafter filed the instant

17  action for judicial review.

18                              **LEGAL STANDARD**

19      Under the Administrative Procedures Act ("APA"), an agency action may be set

20  aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

21

22      [1]In addition to the PTO's decision as to the '307 Patent, the PTO's decisions issued
23  with respect to the following eight patents are at issue herein:  U.S. Patent No. 5,414,425;
    U.S. Patent No. 5,016,009; U.S. Patent No. 5,126,739; U.S. Patent No. 5,146,221; U.S.
24  Patent No. 5,532,694; U.S. Patent No. 5,414,850; U.S. Patent No. 5,506,580; and U.S.
    Patent No. 5,463,390.  The parties have stipulated that the '307 Patent is the
25  "representative patent" for purposes of deciding all issues in the instant action.  (See
    Stipulation and Order, filed March 5, 2008, ¶¶ 3, 4; Pl.'s Mot., filed April 25, 2008, at ii:9-10;
26  Def.'s Cross-Mot., filed May 9, 2008, at 1:26-28.)

27      [2]The administrative record was filed by defendant on April 25, 2008.

28      [3]Failure to pay a maintenance fee within six months of the date the fee is due results
    in expiration of the patent.  See 35 U.S.C. § 41(b).

1  with the law." See 5 U.S.C. § 706(2)(A).  "Under the 'arbitrary and capricious' standard the

2  scope of review is a narrow one."  Bowman Transportation, Inc. v. Arkansas-Best Freight

3  System, Inc., 419 U.S. 281, 285 (1974).  "A reviewing court must consider whether the

4  decision was based on a consideration of the relevant factors and whether there has been

5  a clear error of judgment."  Id. (internal quotation and citation omitted); see, e.g., Smith v.

6  Mossinghoff, 671 F.2d 533, 538 (D.C. Cir. 1982) (holding agency's decision to dismiss

7  petition to revive abandoned patent application "did not lack any basis in reason or

8  common sense" and, accordingly, was not arbitrary and capricious).

9                                          **DISCUSSION**

10        A "fee[ ] for maintaining in force [a] patent[ ]" is due "11 years and 6 months" after

11  the date a patent issues.  See 35 U.S.C. § 41(b).  If a patentee fails to pay the PTO the

12  maintenance fee "within a grace period of 6 months" after the due date, the patentee's

13  patent "expire[s] as of the end of such grace period."  See id.  The PTO may accept a late

14  payment made within two years after the six-month grace period, if the patentee

15  establishes the delay in payment was "unintentional."  See 35 U.S.C. § 41(c)(1).  The PTO

16  may accept a payment made more than two years after the six-month grace period,

17  however, only if the patentee establishes the delay in payment was "unavoidable."  See id.

18        "[I]n determining whether a delay in paying a maintenance fee was unavoidable, one

19  looks to whether the party responsible for payment of the maintenance fee exercised due

20  care of a reasonably prudent person."  Ray v. Lehman, 55 F.3d 606, 609 (Fed. Cir. 1995).

21  A "reasonably prudent" person is one who employs the "care or diligence [that] is generally

22  used and observed by prudent and careful men in relation to their most important

23  business."  See In re Mattullath, 38 App. D.C. 497, 514 (D.C. Cir. 1912).

24        Here, because the '307 Patent issued on March 26, 1991, a maintenance fee was

25  due September 26, 2002, and the six-month "grace period" ended March 26, 2003.  Hi/fn,

26  which did not pay the maintenance fee by March 26, 2003, filed a petition with the PTO on

27  March 23, 2007, seeking leave to make a late payment.  Because the petition was filed

28  more than two years after the six-month grace period, Hi/fn was required to show that its

failure to pay the fee by March 26, 2003 was "unavoidable," as opposed to "unintentional."

See 35 U.S.C. § 41(c)(1).  As noted, the PTO dismissed the initial petition and a petition for

reconsideration.  By the instant action, Hi/fn asserts the PTO's decisions were arbitrary and

capricious.

**A.  Hi/fn's Initial Petition**

**1.  Hi/fn's Argument to the PTO**

In its initial petition, Hi/fn argued that its failure to pay the maintenance fee before

the expiration of the six-month grace period was "unavoidable due to a docketing error and

personnel change which caused miscommunications among the principals involved."  (See

AR US00038.)  Hi/fn summarized its argument to the PTO, as follows:

> Irell & Manella, LLP ["Irell"], the law firm that prosecuted the application from
> which the ['307 Patent] matured, had a reliable docket system to ensure
> timely payment of maintenance fees; that an inadvertent clerical error at Irell
> caused their docket records to not be updated to reflect Hi/fn as the client and
> owner of the ['307 Patent]; as a result of the docketing error, the file was
> mistakenly transferred to attorney Bruce D. Kuyper when Mr. Kuyper left Irell
> to join Latham & Watkins ["Latham"] in June 2000; that the inadvertent
> transfer of files by Irell caused Irell's docketing department to render 'inactive'
> subsequent maintenance fee due dates; that Mr. Kuyper considered himself
> to be handling only licensing type work, rather than prosecution work[,] and
> believed Irell was handling the maintenance fees for Hi/fn, as he did not view
> himself as the attorney responsible for payment of maintenance fees due on
> patents owned by Hi/fn; and that Hi/fn officials were not familiar with routine
> prosecution and maintenance fee related matters on their behalf.

(See id.)

More specifically, Hi/fn argued the following:

The "docketing error" occurred when, after Stac transferred its ownership interest in

the '307 Patent to Hi/fn in 1996, Irell's patent docket clerk failed to note such transfer in

Irell's docket system, and, consequently, Irell's docket continued to show Stac as the owner

of the '307 Patent.  (See AR US00040-41.)[4]  In June 2000, attorney Bruce Kuyper

("Kuyper") left Irell to join Latham and Stac directed Irell to transfer all Stac files to Kuyper

at Latham.  (See AR US00091-92.)  At that point, Irell transferred to Latham the '307

---

[4]Hi/fn stated that the docket clerk should have updated Irell's docket no later than
November 1997.  (See id.)

1   Patent file, among others.  (See id.)  Also in June 2000, Hi/fn advised Irell that Hi/fn was

2   transferring some of its business from Irell to Latham, and directed Irell to prepare "a list of

3   all Hi/fn files at Irell so that [Hi/fn] [could] determine which ones to have [Irell] transfer."

4   (See AR US00042.)  The list Irell subsequently prepared for Hi/fn did not include the '307

5   Patent, because, as noted, the file for such patent had been sent by Irell to Latham and

6   was no longer "at Irell."  (See id.)  Thereafter, some of Hi/fn's files were handled by Latham

7   and others continued to be handled by Irell.

8          On May 15, 2002, Latham, by email, advised Hi/fn that the maintenance fees for two

9   of Hi/fn's patents were due and asked if Hi/fn wished to have Latham pay the fee on behalf

10  of Hi/fn; in that email, Latham noted that Hi/fn could "disregard the notice" if Hi/fn had

11  already been advised by Irell that the fees were due.  (See AR US00073.)  Later that same

12  date, May 15, 2002, Hi/fn responded to Latham's email by requesting that Latham pay the

13  fees due for the two patents referenced in Latham's email.  (See AR US00076.)

14  Approximately one month later, on June 17, 2002, Hi/fn sent Latham an email, attached to

15  which was a list of Hi/fn's patents, including the '307 Patent, and the date on which the

16  maintenance fee for each such patent was due; the list indicated the maintenance fee for

17  the '307 Patent was due September 26, 2002.  (See AR US00076-78.)  In its June 17, 2002

18  email, Hi/fn asked Latham to review the list and "see if [the information on the list] agree[d]

19  with [Latham's] records."  (See id.)  Latham did not respond to the email because the

20  attorney to whom it was directed was "on travel at the time" and "overlooked acting on

21  [Hi/fn's] email upon his return to the office."  (See AR US00050.)

22         Meanwhile, there remained some "question" on the part of Irell as to which specific

23  Hi/fn files it should be handling.  (See AR US00043.)  Any such question, however, was

24  definitively answered by Hi/fn on December 23, 2002, when, at a meeting between Hi/fn

25  and Irell, Hi/fn advised Irell that Latham would "handle all files" in Latham's possession,

26  which files, as noted, included the '307 Patent file.  (See AR US00215-16.)  Hi/fn did not,

27  however, notify Latham of such decision, because Hi/fn believed Latham was already

28  "handling" the files in Latham's possession.  (See AR US00215.)

1    Hi/fn did not realize it had failed to timely pay the maintenance fee and that the '307
2    Patent had expired until Hi/fn was informed of such fact by one of its licensees in
3    November 2006.  (See AR US00282.)

4        **2.  The PTO's Decision**

5        The PTO, in its order dismissing the initial petition, found Hi/fn had failed to meet its
6    burden to sufficiently show the docketing error was "an unforeseeable, isolated event," and
7    thus had failed to show its failure to pay the maintenance fee, if caused by the docketing
8    error, was "unavoidable."  (See AR US00010.)  Alternatively, the PTO found "the cause of
9    the delay" was not the docketing error by Irell, but, rather, was "Hi/fn's failure, after
10   informing [Irell in December 2002] that [Irell] was no longer responsible for tracking and
11   paying the maintenance fee, to obligate another to track the fee, or itself track and pay the
12   fee."  (See id.)  Further, the PTO found that to the extent "Kuyper [of Latham] overlooked
13   any duty that he may have owed to [Hi/fn],"  Hi/fn was "bound by the consequences of those
14   actions or inactions."  (See AR US00011.)

15   **B.  Hi/fn's Petition for Reconsideration**

16       **1.  Hi/fn's Argument to the PTO**

17       In seeking reconsideration of the dismissal of its petition, Hi/fn offered additional
18   evidence to support its arguments that Irell's docketing error was "unavoidable," that the
19   docketing error was the cause of Hi/fn's failure to timely pay the maintenance fee, and that
20   Hi/fn acted reasonably in relying on Latham based on what Hi/fn understood in December
21   2002, when it instructed Irell to no longer take any action with respect to the '307 Patent.

22       In particular, Hi/fn argued the following additional evidence should be considered by
23   the PTO:

24       A former Irell docket clerk made the asserted "clerical error," when, although she
25   had received documents indicating Stac had assigned to Hi/fn twelve patents, including the
26   '307 Patent, she only made an entry in Irell's "patent docketing system" reflecting that one
27   of those assignments had occurred; she failed to make "entries to the patent docketing
28   system as necessary [to] reflect[ ] the assignment of [the other eleven] patents from Stac to

6

Hi/fn," including the '307 Patent.  (See AR US00262, US00US00269.)[5]  The docket clerk's

supervisor recalls the docket clerk "had prior patent docketing experience with another law

firm before joining Irell," had been "train[ed] [by Irell] in the need to enter assignment

information in the patent docketing system to reflect changes in the ownership of patents,"

and was "competent and not prone to making mistakes in entering information."  (See AR

US00298.)  According to Hi/fn, had the docket clerk properly updated the docket, and had

the '307 Patent remained with Irell, Irell, in conformity with its usual practice, would have

asked Hi/fn "after the start of [the] six month window for payment of the maintenance fee,"

i.e., after September 26, 2002, if Hi/fn wished Irell to pay the maintenance fee on Hi/fn's

behalf.  (See AR US00297.)

        At the time Irell met with Hi/fn in December 2002, Hi/fn was of the view that both

Latham and Irell were "monitoring the due dates for payment of maintenance fees due on

all of Hi/fn's patents," and it decided to direct Irell not to "handle" any file in Latham's

possession so as "to reduce unnecessary duplication of efforts by the Irell Firm and the

Latham Firm."  (See AR US00277.)  In December 2006, Latham was "notified" of the

decision Hi/fn had made in December 2002 (see AR US00278, AR US00323);[6] had Latham

been notified in December 2002 that Hi/fn, at that time, had directed Irell not to handle the

files in Latham's possession, Latham would have "suggested to Hi/fn that the relevant data

be kept with Irell or turned over to an annuity service for monitoring purposes" (see AR

US00278).  Further, had Latham been "made aware that the maintenance fee for [the '307

Patent] was due, [Latham] would have . . . contacted [Hi/fn] as a courtesy to check whether

someone was already handling this matter for them, and would have handled the payment

if no one else was."  (See AR US00324.)

//

//

---

[5]In its Initial Decision, the PTO found the clerical error was caused by a Senior Legal Assistant, not by the docket clerk.  (See AR US00010-11.)

[6]Hi/fn did not indicate by whom or how Latham was "notified."

1      **2.  The PTO's Decision**

2          In dismissing the petition for reconsideration, the PTO again found Hi/fn had failed to

3    show that, even assuming Irell's docketing error was the cause of Hi/fn's failure to timely

4    pay the maintenance fee, the failure to pay was "unavoidable."  (See AR US00022,

5    US00025-26.)  Alternatively, the PTO again found the cause of Hi/fn's failure to timely pay

6    was Hi/fn's failure to obligate another to track the fee or to itself pay the fee, after it

7    excused Irell from such responsibility.  (See AR US00023-24).  Further, the PTO found

8    both Hi/fn and Latham, through their respective representatives, failed to exercise the "due

9    care and diligence of prudent and careful persons."  (See AR US00027).

10   **C.  Analysis Under the APA**

11         As noted, Hi/fn argues the PTO's decisions were arbitrary and capricious.

12         With respect to the PTO's finding regarding Irell's docketing error, Hi/fn argues the

13   PTO erred in finding the docketing error, which occurred in 1997, did not render

14   "unavoidable" Hi/fn's failure to pay the fee within the grace period, i.e., by March 2003.

15   According to Hi/fn, the PTO erred by not accepting Hi/fn's argument that Irell's docketing

16   system was "reliable" and that Irell's docketing personnel were "sufficiently trained and

17   experienced."  (See Pl.'s Mot. at 21:10-12.)  Hi/fn further argues the PTO erred in

18   alternatively finding that the docketing error was not the cause of Hi/fn's failure to pay the

19   maintenance fee.

20         Assuming, arguendo, the docketing error was the cause of Hi/fn's failure to timely

21   pay the maintenance fee,[7] the Court finds the PTO's decision, that Hi/fn's failure to timely

22   pay was not "unavoidable" by reason of such error, was not arbitrary and capricious.

23   Where a patentee relies on a third party, such as Irell, to take the necessary steps to cause

24   _____

25         [7]Hi/fn's causation argument implicitly rests on the assertion that if Irell had not
     transferred the '307 Patent file to Latham in June 2000, Hi/fn would have continued to
26   retain Irell to handle that file.  Such assertion, however, does not appear to be supported by
     the record, given that Hi/fn, in June 2000, moved some of its files from Irell to Latham (see
27   AR US00092), and that Hi/fn, after being advised by Irell in June 2000 that Irell was not
     handling the '307 Patent file (see AR US00092-93), did not request that Latham to send the
28   '307 Patent file back to Irell.

1 the patentee to pay maintenance fees on a timely basis, the patentee "is bound by any

2 errors that may have been committed by [the third-party]."  See Burandt v. Dudas, 496 F.

3 Supp. 2d 643, 652 (E.D. Va. 2007) (citing cases), aff'd, 528 F.3d 1329 (Fed. Cir. 2008).

4 Where an error by the third party occurs, the patentee is entitled to reinstatement of its

5 patent only by demonstrating to the PTO that the third party's failure to cause the patentee

6 to pay the fee was "unavoidable," which, in this instance, would require a showing that the

7 docket clerk and/or her supervisors, in spite of any errors, acted with the care exercised by

8 "prudent men in their most important business."  See id.

9 　　　　As the PTO pointed out (1) Hi/fn failed to offer a declaration from the docketing

10 clerk, who would have had the most knowledge of the reason for the docketing errors and

11 could have shed light on her usual practices,[8] (2) the declaration offered by Hi/fn from the

12 docketing clerk's supervisor failed to provide any specific information as to the nature of the

13 training given to the docketing clerk or how the clerk's work was normally supervised, and

14 (3) Hi/fn failed to explain how the docketing clerk's error with respect to the '307 Patent

15 could be considered "unavoidable" in light of her having misdocketed 11 out of 12 patents

16 Stac had reassigned to Hi/fn, including the '307 Patent.

17 　　　　Moreover, as the PTO noted, Hi/fn, on June 17, 2002, provided Latham with a list of

18 Hi/fn's patents that Latham was handling and included therein a notation that the

19 maintenance fee for the '307 Patent was due on September 26, 2002.  (See AR US00078,

20 US00215.)  Thus, months before Irell would have, under Hi/fn's theory, notified Hi/fn of its

21 responsibility to pay the maintenance fee but for the docket clerk's error, Hi/fn knew the

22 due date and, as the PTO found, did not take any steps to cause itself or Latham, whom it

23 knew was handling the file, to pay the fee due only a few months later.  Further, as noted,

24 Latham was advised by Hi/fn of the due date, and, even though Latham conceded to the

25 PTO that, if it had been advised the fee was due, it would have brought the matter to Hi/fn's

26 attention and would have paid the fee for Hi/fn if Hi/fn had not made other arrangements for

27 ───────────────

28 　　　[8]The PTO observed that although Hi/fn stated the docketing clerk was no longer
employed by Irell, Hi/fn failed to indicate what steps, if any, it had taken to locate her.

1   payment (see AR US00324), Latham, in fact, did nothing in response to Hi/fn's notification.

2   Under such circumstances, the Court cannot say the PTO's determination was clearly

3   erroneous, see Bowman Transportation, 419 U.S. at 285, or that it "lack[s] any basis in

4   reason or common sense," see Smith, 671 F.2d at 538.

5        To the extent Hi/fn argues the PTO erred in finding Hi/fn failed to act reasonably

6   when it relied on Latham to pay the fee, the record again demonstrates that the PTO's

7   finding was not arbitrary and capricious.  First, Hi/fn never expressly requested Latham to

8   track and pay the maintenance fee on behalf of Hi/fn; the PTO's finding, that Hi/fn's failure

9   to make such a request "was not the action of a prudent and careful person with respect to

10  his most important business" (see AR US00008), cannot be characterized as clearly

11  erroneous or as lacking any basis in reason or common sense.  Second, to the extent Hi/fn

12  may have implicitly requested that Latham take such a step on behalf of Hi/fn, such as by

13  emailing Latham the above-discussed document in which the date for payment of the

14  maintenance fee was included (see AR US00078, US00215), Hi/fn fares no better,

15  because, as the PTO pointed out, Hi/fn "is bound by any errors that may have been

16  committed" by its counsel, see Burandt, 496 F. Supp. 2d at 652.  As noted by the PTO in its

17  decisions, it is undisputed that Latham took no steps to track the date on which the

18  maintenance fee for the '307 Patent was due (see AR US00185, US00188), and, as

19  discussed above, Latham, even upon being notified by Hi/fn of the date on which the '307

20  Patent's maintenance fee was due, did nothing in response to such notification.

21       In sum, Hi/fn has failed to show the PTO's dismissal of either its initial petition or its

22  petition for reconsideration was arbitrary and capricious.

23       Accordingly, plaintiff is not entitled to summary judgment and defendant is entitled to

24  summary judgment.

25  //

26  //

27  //

28  //

10

**CONCLUSION**

For the reasons stated above:

1.  Plaintiff's motion for summary judgment is hereby DENIED; and

2.  Defendant's cross-motion for summary judgment is hereby GRANTED.

**IT IS SO ORDERED.**

Dated: January 26, 2009

MAXINE M. CHESNEY
United States District Judge

11